David Michael **AMBURGEY**, Plaintiff–Appellant,

v.

**CONSOLIDATION COAL COMPANY, a foreign corporation; Local Union 6193, United Mine Workers of America, Defendants–Appellees.**

No. 89–2775.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1990.

Decided Jan. 2, 1991.

Kathryn Reed Bayless, Princeton, W.Va., for plaintiff-appellant.

James Wilbur McNeely, General Counsel, Dist. 29, United Mine Workers of America,

---

1. Of the Eastern District of New York, sitting by designation.

**28**

Beckley, W.Va., for defendant-appellee Local 6193.

Daniel L. Stickler, Sr., Jackson & Kelly, Charleston, W.Va., for defendant-appellee Consolidation Coal.

Before RUSSELL and HALL, Circuit Judges, and CACHERIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

David Amburgey appeals an order of the district court directing a verdict in favor of appellees union local and coal company in Amburgey's claim for relief under § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185. We affirm.

I.

This case results from the United Mine Workers's (UMW) unenviable position representing miners who are competing with one another for a dwindling supply of jobs in the coal mines.

Appellant David Amburgey was employed as an electrician at Consolidation Coal Company's (Consol) Jenkinjones mine in McDowell County, West Virginia. He was laid off in 1986. With over a decade of employment, he was high on the seniority list. He left his father's telephone number for the panel list in the event of a recall. Soon he found another job in a mine operated by Clinch Valley Coal Company.

In October 1987, Consol called back six electricians. The company twice left messages at Amburgey's father's number, but he did not respond to the recall. Consol proceeded down the panel list until they had filled all six positions.

Amburgey maintains that he did not learn of the recall until after Christmas 1987. At that time, he was still employed by Clinch Valley; however, he lost that job on January 4, 1988. On January 13, 1988, Amburgey telephoned mine committeeman Roger Miller of UMW Local 6193 to complain about Consol's failure to recall him in October. The next day, Amburgey met with Miller and UMW District 29 Executive Board Member Sam Fragile. They advised Amburgey to speak to the Mine Superintendent, Mark Hrovatic, about the matter (step 1 of the grievance procedure). Amburgey's initial attempt to do so was unsuccessful. Fragile then assisted Miller in "writing up" the grievance, and Miller scheduled a level 2 grievance meeting for January 15. Before the meeting, without the knowledge or assistance of Miller, Amburgey met with Consol officials a second time and agreed to settle his grievance without backpay. Though Miller objected to Amburgey's waiver of backpay, the grievance was resolved, and Amburgey was reinstated on January 18, 1988. Miller had been told by other miners that Amburgey had known of the recall in October and had simply chosen to stay with Clinch Valley, but he did not volunteer this negative information at the meeting, as is standard union practice in all grievances.

The most junior electrician, Taylor, was laid off to make room for Amburgey. Taylor then approached Miller about filing his own grievance. Miller followed the same routine procedure he used with Amburgey. Taylor was told to informally approach management, which he did without result. Miller wrote up the grievance with Fragile's assistance, and scheduled a level 2 meeting. This time, the matter was not resolved at level 2, and Fragile at District 29 took over for a level 3 hearing, though Miller assisted in preparation of the case by gathering witnesses. Again, Miller and Fragile followed standard UMW grievance procedure by letting the grievant pick his witnesses. Taylor did not seek to have Amburgey testify, though the theory of his grievance was that Amburgey knew of the recall in October and elected to stay on with Clinch Valley. Taylor's grievance was sustained, he was reinstated, and Amburgey was again laid off on January 23, 1988.

Amburgey went to Miller's house three or four times over the next couple of weeks. On his second visit, Miller provided him with a blank grievance form and an "NLRB form" (in case he wished to complain of the local's labor practices). Miller testified that he was always willing to file another grievance for Amburgey. On or

about January 25, with the assistance of an unidentified lawyer,[1] Amburgey drafted and sent a letter threatening "legal action" to District 29 president Everett Acord.

Amburgey testified that he called Fragile about filing a grievance, and Fragile told him that he could file all of them he wanted, because Fragile would put them in the trash can when they reached the district. Rather than attempt to pursue his contractual grievance remedy, Amburgey filed this suit against Consol and Local 6193 under § 301 of the LMRA. He did not sue District 29.

The case eventually proceeded to jury trial. During his initial testimony, Amburgey provided no evidence of any hostility toward him on the part of the local. However, his wife, when confronted on cross-examination with this lack of evidence, stated that "we got the door slammed in our face" when they went to Miller's house. This statement was immediately impeached by her deposition testimony, in which she had denied any firsthand knowledge of any meeting with Miller, and had stated that she sat in the Amburgeys' truck during the visit in question.

The next morning, Amburgey was recalled to the stand and remembered the same incident. However, even he admitted that the supposed door slamming did not occur until his third or fourth visit to Miller; his letter to Acord threatening suit was sent after the first visit.

At the close of Amburgey's case-in-chief, the union local moved for a directed verdict. The district court denied the motion at that time, but after Local 6193 presented its evidence, the court granted a directed verdict. Amburgey appeals.

## II.

■ LMRA § 301 provides a federal remedy for breaches of a collective bargaining agreement. Individual employees may assert § 301 claims; however, a union must be given the opportunity to act on behalf of its member before he may proceed on his own. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). A cause of action will only lie against an employer if the union has breached its duty of fair representation of the employee. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The reasoning behind this rule is simple. Federal labor law policy favors adjustment by the parties of disputes arising under a collective bargaining agreement. See LMRA § 203(d), 29 U.S.C. § 173(d): "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes." The federal courts do not invade this domain on the complaint of an employee unless his union is "grossly deficient" in its representation or "recklessly disregards" the employee's rights. *Wyatt v. Interstate & Ocean Transp. Co.,* 623 F.2d 888, 890–91 (4th Cir.1980).

■ An employee does not make his task any easier by not at least attempting to exhaust his contractual remedies. Certainly, where the employee has actual union performance during the grievance process as evidence, he can better show how it was "grossly deficient." A plaintiff like Amburgey must show that, because of the union's breach of its duty of fair representation,[2] resort to contractual remedies would have been futile. *Vaca,* 386 U.S. at 185–92, 87 S.Ct. at 914–18; *Glover v. St.*

---

1. Amburgey testified that he drafted this letter himself, except that he "might have" had help from his wife. His wife testified that she did not help, but that a Bluefield, West Virginia, attorney had. The union emphasizes the involvement of this unidentified attorney, a scant two days after the layoff. It argues that Amburgey's actions were not attempts to obtain redress, but rather were crafted by attorney instructions in order to try to build a § 301 case against the union.

2. This causation element is central to the "futility" concept. A grievance may be "futile" for a lot of reasons, including that it is meritless; a union's refusal to process an unworthy grievance is not a breach of any duty to an employee, and will not support a § 301 claim. *Vaca,* 386 U.S. at 190–92, 87 S.Ct. at 916–18.

Louis–San Francisco Ry. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 51976142328

We believe that the district court correctly entered a directed verdict. We cannot term the local's actions "grossly deficient" or "in reckless disregard" of Amburgey's rights. District 29 was not made a party to this suit; therefore, Fragile's alleged "trash can" statement cannot support Amburgey's recovery against the local. Furthermore, the UMW is *entitled* by the applicable collective bargaining agreement to choose not to process grievances it believes are unwarranted. A union is its members' representative, not their puppet, and its duty of fair representation is not a servitude to their individual whims. If Local 6193 had simply refused to pursue Amburgey's grievance at all, his evidence would likely not support a reasonable jury finding that the union's performance was "grossly deficient." It most definitely will not support such a verdict where the local was ready and willing to file and process his grievance.

The union, especially local committeeman Miller, was put in an extremely difficult position by the successive Amburgey and Taylor grievances. A lawyer placed in a similar conflict would be able, and indeed duty-bound, to relinquish representation of one of the grievants. However, the union has no such luxury, and must do its best to fairly represent all of its members, even when the success of one necessarily requires the failure of another. Local 6193 probably did as well in walking the tightrope as it could in this case. The judgment of the district court is affirmed.

AFFIRMED.