952 F.2d 397
 58 Fair Empl.Prac.Cas. (BNA) 336
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Oscar Don TATE, Plaintiff-Appellant,
v.
PRESTON TRUCKING COMPANY, INCORPORATED OF MARYLAND; Eastern
Conference of Teamsters, Defendants-Appellees,
and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen & Helpers of America, Local Union Number 822,
Agent; International Brotherhood of Teamsters, Chauffeurs,
Warehousemen & Helpers of America, Defendants.
 No. 90-1158.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 3, 1991.
Decided Jan. 2, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. (CA-90-93-N), John A. MacKenzie, Senior District Judge.
 Argued: Arthur Anthony Lovisi, Norfolk, Va., for appellant; Melvin R. Manning, Manning, Davis & Kirby, Richmond, Va., for appellee Preston Trucking; Christy Concannon, Baptiste & Wilder, P.C., Washington, D.C., for appellee Eastern Conference of Teamsters.
 On Brief: F. William Kirby, Jr., Manning, Davis & Kirby, Richmond, Va., for appellee Preston Trucking; Patrick J. Szymanski, Robert Baptiste, Baptiste & Wilder, P.C., Washington, D.C., for appellee Eastern Conference of Teamsters.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Oscar Don Tate appeals orders of the district court finding in favor of appellee company on a Title VII claim tried to the court and directing a verdict on § 1981, § 1985, and other claims tried simultaneously to a jury. Tate also appeals a pretrial order dismissing the Eastern Conference of Teamsters as a defendant. We affirm.
 
 I.
 
 2
 The district court's memorandum opinion states the facts succinctly:
 
 
 3
 After some brief "glowering" at each other on July 27, 1989, Oscar Don Tate (Tate) and Joseph Lacey, Sr. (Lacey) were both at work at the terminal of Preston Trucking Company, Inc. (Company) in the early evening of July 28, 1989. They had an unpleasant passing contact of only moderately menacing proportions beginning with Tate's obviously annoying inquiry to Lacey as to why he "seemed to have a hair up his ass". The two brushed each other, some minor blows passed and the pair then walked down the loading dock toward the office to take their problem to the Terminal Manager. Along the way, Tate, who is white, called Lacey, who is black, "a nigger", using the racial slur several times. As a result, a real donnybrook ensued, and Tate was injured.
 
 
 4
 As a result of this violence on the Company terminal, both men were discharged. Each filed a grievance following procedures set forth in the Collective Bargaining Agreement (Agreement). Local 822 of the Teamsters (Local 822) undertook preliminary negotiations with the Company on behalf of both Tate and Lacey. A short time later, the Company downgraded the discharge of Lacey, who is black, to a 21-day suspension without pay. The discharge of Tate, a white man, was not rescinded.
 
 
 5
 Tate proceeded with his grievance to the Virginia State Committee (VSC). Its six members are appointed, in equal strength (three each), from the trucking industry and labor. None were connected with Preston Trucking Company or Local 822. All members were white. A decision on Tate's grievance was deadlocked with an even vote. Thus, the discharge of Tate was left standing.
 
 
 6
 The grievance then went up to the Eastern Conference Joint Area Committee (ECJAC), where it was heard again by a six-member panel, three from unions (but not Local 822) and three from eastern region trucking companies (but not Preston). Again this panel was all white. ECJAC voted affirmatively to deny the position of Local 822 and to uphold Tate's discharge. Ervin Williams, Business Agent of Local 822, represented Tate at both grievance proceedings.
 
 
 7
 Tate filed discrimination charges with the Equal Employment Opportunity Commission (EEOC). The EEOC gave him a right-to-sue letter, and he quickly exercised that right. On February 2, 1990, he filed a complaint in district court against Local 822 and Preston. He amended this complaint twice. The final amended complaint added the Eastern Conference of Teamsters as a defendant. It alleges these six claims:
 
 
 8
 (1) violation of the collective bargaining agreement by Preston;
 
 
 9
 (2) breach of the duty of fair representation by Local 822 and the Eastern Conference;
 
 
 10
 (3) violation of Title VII by discharging (Preston) and failing to adequately represent (Local 822) Tate because of his race;
 
 
 11
 (4) violation by Preston of 42 U.S.C. § 1981 by denying Tate an equal right to "make and enforce contracts" because of his race;
 
 
 12
 (5) violation by all defendants of 42 U.S.C. § 1985 by conspiring to deprive Tate of contract rights because of his race; and
 
 
 13
 (6) a pendent state claim for intentional infliction of emotional distress.
 
 
 14
 Preston and Local 822 answered and, after discovery, moved for summary judgment. The Eastern Conference filed a pre-answer motion to dismiss or for summary judgment. After hearing argument on the motions, the district court dismissed the Eastern Conference because it was not a party to the collective bargaining agreement, was not Tate's grievance representative, and exercised no control over Local 822's handling of the grievance. On the other hand, though it rejected some of Tate's legal theories (e.g., that Local 822's representation of both Lacey and Tate breached its duty of fair representation[1]), the court denied summary judgment on the remaining claims because of material conflicts of evidence.
 
 
 15
 Trial was held October 1-3, 1990. At the conclusion of all the evidence, the district court directed a verdict for the defendants on the claims tried to the jury (§ 1981, § 1985, emotional distress, fair representation, and breach of contract) and found for the defendants on the Title VII claim tried simultaneously to the court. The court later issued a memorandum opinion explaining its decision.
 
 
 16
 Tate appeals only the judgments in favor of Preston and the dismissal of the Eastern Conference. He does not appeal the judgments in favor of Local 822.
 
 II.
 
 17
 Tate assigns numerous errors, but we have been able to distill them into four general attacks.
 
 A.
 
 18
 Tate presented a tenuous race-discrimination theory at trial. He alleged that Lacey was reinstated and he remained terminated because Preston was discriminating against whites in order to rectify its previous discrimination against blacks. He offered some evidence of past discrimination against blacks (e.g., a racially derogatory cartoon that had been posted on the bulletin board), but no evidence beyond his own conjecture that the company had turned the tables to discriminate against whites. Lacey is black; he was reinstated after 21 days without pay. Tate is white; he was terminated. Tate's evidence of discrimination ended there.
 
 
 19
 Preston and Local 822 presented overwhelming evidence that the discharge was not racially motivated. The collective bargaining agreement provides for the termination of the initiator of any fight on company property. Therefore, when Tate and Lacey were both terminated, and then Local 822 filed grievances for both, the company was put in a difficult position. A successful grievant is entitled to reinstatement with full seniority and back pay--an expensive remedy. The company interviewed witnesses among its employees (all of whom identified Tate as the instigator) and used its knowledge of past discipline of Tate and Lacey[2] to conclude that Lacey was telling the truth--Tate had incited the fight by calling Lacey a "nigger."
 
 
 20
 Preston, fearing potential back pay liability, offered to settle Lacey's grievance for a 21-day suspension without pay. Local 822 and Lacey agreed.
 
 
 21
 In this court, Tate has expended great effort arguing about who started the fight. He admits calling Lacey a "nigger," but not until after Lacey had struck him. The company did not believe Tate, and apparently the ECJAC did not either.[3] For purposes of Tate's race-discrimination claims, it makes no difference. The company could be completely wrong about who started the fight--so long as race was not the reason for its decision, it did not violate Title VII, § 1981, or § 1985.[4]
 
 
 22
 We agree with the district court that Tate failed to present sufficient evidence for a reasonable jury to rule in his favor; the directed verdict on the claims tried to the jury was therefore proper. It necessarily follows that the district court's findings on Tate's Title VII claim are not clearly erroneous.
 
 B.
 
 23
 Tate also argues that the district court erroneously decided the Title VII claim and then gave its ruling collateral estoppel effect to remove the other claims from the jury. Lytle v. Household Manufacturing, Inc., 494 U.S. 545 (1990), holds that a plaintiff should not lose his right to a jury trial by a bench ruling on a joined equitable claim that could collaterally bar jury resolution of a factual issue. If Tate interprets Lytle to require submission of every case to the jury, he is wrong. Nothing precludes a district court from directing a verdict if there is not evidence to support a claim, just as it could in any case. The court simply may not use the joinder of legal and equitable claims to defeat a plaintiff's right to trial by jury. The district court did precisely what it should have here. It waited until the conclusion of all the evidence, and then considered the motion for a directed verdict and arguments on disposition of the Title VII claim simultaneously. If the court had found sufficient evidence to send the other claims to the jury, it would have had to wait until the verdict to resolve the Title VII claim. However, because it directed a verdict, there was no reason for the district court to tarry. It was perfectly appropriate for the court to enter judgment on the Title VII claim contemporaneously with directing a verdict on the other claims.
 
 C.
 
 24
 Tate launches several salvos at the district court's rulings on evidence. Questions of admissibility are entrusted to the district court's discretion, and are reviewed only for abuse of that discretion. Persinger v. Norfolk & Western Railway Co., 920 F.2d 1185, 1187 (4th Cir.1990).
 
 
 25
 Tate sought to introduce evidence that Lacey had pulled a knife on the job in 1973 (at a different company), and that Lacey had been convicted of misdemeanor assault for beating his wife in 1984. The district court said "that hasn't got anything to do with this case," and we completely agree.
 
 
 26
 Tate also wanted to offer the testimony of Joanne Lachs. This witness had not been disclosed until after the discovery deadline. At the pretrial conference, the court deferred ruling on whether she (and others similarly disclosed too late) would be permitted to testify. At trial, the court refused to permit her to testify. Tate argues that the court forgot the pretrial proceedings, at which it had agreed that Lachs could testify. The record does not provide a clear answer to Tate's allegation. In any event, Tate did not make a proffer of Lachs' expected testimony. Accordingly, there is nothing in the record to indicate that she would have said anything that would have changed the course of events below.
 
 
 27
 Finally, the court refused Tate's attempt to introduce evidence of an incident in 1990 that Tate contended showed another instance of Preston's discrimination against a white worker. The district court ruled that the "isolated incident" was "absolutely irrelevant."
 
 
 28
 We find no abuse of discretion in the district court's rulings on evidence.
 
 D.
 
 29
 A claim for breach of the duty of fair representation in processing a grievance lies only against the union that is the employee's grievance representative--his statutory bargaining representative that is party to the collective bargaining agreement. In this case, that entity is Local 822. Sine v. Teamsters Local 992, 730 F.2d 964 (4th Cir.1984). Indeed, in Sine we rejected a fair representation claim against the Eastern Conference; few precedents are so squarely on point, in fact and law. The district court's dismissal of the Eastern Conference was therefore appropriate.[5]
 
 
 30
 The judgment of the district court is affirmed.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 See Amburgey v. Consolidation Coal Co., 923 F.2d 27, 30 (4th Cir.1991)
 
 
 [2]
 Tate had twenty-three infractions (most very minor) over sixteen years of employment, including two discharges--one for a physical altercation with his supervisor and the other for throwing beer cans onto company property while drinking after work hours on an adjacent lot. Local 822 had been able to have him reinstated both times. Lacey's 16-month work record was clean
 
 
 [3]
 Tate offered no evidence that the union's representation of him was so "grossly deficient" as to constitute a breach of the duty of fair representation. See Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 890-891 (4th Cir.1980). In the absence of a breach of that duty, the decision of an arbitral body like the ECJAC may not be overturned by a court so long as it derives its essence from the collective bargaining agreement. United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960). The ECJAC decision easily satisfies this deferential standard. Moreover, an individual employee may not even maintain a breach-of-contract claim against his employer after losing a grievance unless his union has breached its duty of fair representation. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-572 (1976). Accordingly, Tate's breach of duty of fair representation and breach of collective bargaining agreement claims must fail
 
 
 [4]
 The § 1985 claim has an additional defect--Tate presented no evidence of conspiracy
 
 
 [5]
 Tate makes an overblown "Gideon's Trumpet" argument about the rule of the ECJAC (the labor half of which is the Eastern Conference) that prohibits presentation of grievances by attorneys. Tate cannot overcome sound circuit precedent on this issue. "Neither lawyers nor strict adherence to judicial rules of evidence are necessary complements of industrial stability." Walden v. Teamsters Local 71, 468 F.2d 196, 197 (4th Cir.1972)