40 F.3d 1244
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Howard HYPES, Plaintiff-Appellant,
v.
CYPRUS KANAWHA CORPORATION, a Delaware Corporation,
Defendant-Appellee.
 No. 94-1068.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 28, 1994.
Decided Nov. 23, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-92-735-2)
 Andrew Apostile Raptis, Charleston, WV, for Appellant.
 Donna Colberg Kelly, Smith, Heenan & Althen, Charleston, WV, for appellee.
 Forrest H. Roles, Smith, Heenan & Althen, Charleston, WV, for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before MURNAGHAN and WILLIAMS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this case, Appellant, Howard Hypes, a member of the United Mine Workers of America ("UMWA"), seeks to vacate an arbitration award finding that Hypes's employer, Appellee, Cyprus Kanawha Corporation ("Cyprus"), had not wrongfully discharged him from his employment as a barge attendant with the company. Pursuant to the National Bituminous Coal Wage Agreement ("NBCWA"), a collective bargaining agreement to which the UMWA and Cyprus were signatories, Hypes had submitted for binding arbitration a claim that his lay off amounted to a violation by Cyprus of the NBCWA's prohibition against the "contracting out" of work. On June 7, 1992, the arbitrator entered an award, considered binding and final under the express terms of the NBCWA, denying Hypes's grievance and upholding his discharge.
 
 
 2
 On August 5, 1992, Hypes commenced an action in the United States District Court for the Southern District of West Virginia in which he asked the District Court to vacate the arbitrator's award. Upon motion for summary judgment by Cyprus, the District Court dismissed Hypes's petition. Hypes now asks us to reverse the District Court's grant of summary judgment and vacate the arbitrator's award.
 
 I. Factual Background
 
 3
 Hypes was employed as a barge attendant by Cyprus on January 23, 1990. On March 3, 1990, Hypes was laid off for the first time when the duties of barge attendant were assigned to a newly created position of electrician. In response to his lay off, Hypes requested arbitration of his grievance. The arbitrator, Marlin M. Volz, found that Hypes was wrongfully discharged. Hypes was returned to his job.
 
 
 4
 On April 26, 1991, Cyprus, deciding that Hypes's full-time position as barge attendant was no longer necessary, laid off Hypes for a second time; it is that discharge which is directly at issue in the instant case. The UMWA challenged the discharge on Hypes's behalf through the grievance mechanism set forth in the NBCWA. Having exhausted the pre-arbitration grievance procedure without successful settlement, the UMWA and Cyprus submitted the dispute to binding arbitration by Norman R. Harlan on April 18, 1992.
 
 
 5
 During the arbitration hearing, Hypes alleged that Cyprus had violated the NBCWA by wrongfully "contracting out" his job; Hypes additionally alleged that the previous 1990 arbitration award in his favor had a res judicata effect on the present arbitration hearing, and thus should control the outcome of the proceeding. Arbitrator Harlan denied Hypes's grievance. The UMWA neither contested the adverse award nor claimed that Cyprus had failed to abide by its duty properly to process Hypes's grievance.
 
 
 6
 On August 7, 1992, Hypes filed a petition to vacate the arbitration award in the United States District Court for the Southern District of West Virginia. In his complaint, Hypes predicated jurisdiction on diversity and on the Federal Arbitration Act, 9 U.S.C. Secs. 1-16 ("Arbitration Act"). Relying on section 10 of the Arbitration Act, Hypes asserted that the arbitration award should be vacated because: (1) the arbitrator had exhibited undue partiality in favor of Cyprus during the proceedings, (2) the arbitrator had grossly erred in ruling that the prior arbitration award in Hypes's favor did not have a res judicata effect, (3) the arbitrator exceeded his authority by formulating his own issue for arbitration, and (4) the arbitrator exhibited irrationality during the decisionmaking process. Significantly, however, Hypes did not allege that the UMWA had failed to represent him fairly at the arbitration hearing. Indeed, Hypes conceded in his affidavit opposing Cyprus's subsequent motion for summary judgment that he had "doubts as to whether the Union fairly represented [him], but without access to a recording [of the arbitration hearing], [he was] not in a position to say."
 
 
 7
 On July 8, 1993, the District Court granted Cyprus's motion for summary judgment, finding that Hypes had failed adequately to demonstrate that the UMWA had breached its duty of fair representation during the arbitration proceeding. Hypes filed a timely notice of appeal on January 6, 1994.
 
 II. Standard for Review
 
 8
 In deciding whether to affirm the District Court's grant of summary judgment in favor of Cyprus, we should be guided by the familiar standard employed by trial courts in ruling on motions for summary judgment: summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, taken together, show that there exists no genuine issue of material fact, and that the moving party is therefore entitled to a judgment as a matter of law. Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 123-24 (4th Cir.1990). In reviewing a grant of summary judgment by a district court, we have a very limited task: we must determine only whether a genuine issue of material fact exists and whether the law was applied correctly by the District Court; we cannot, and do not, attempt actually to resolve any disputed issues of fact. Moreover, although a reviewing court must view the facts in the light most favorable to the party opposing the motion for summary judgment, the opposing party cannot defeat such a motion by putting forth merely conclusory allegations or by presuming missing facts. Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990); Allstate Financial Corp. v. Financorp., Inc., 934 F.2d 55, 58 (4th Cir.1991).
 
 
 9
 Additionally, we are guided by the well-settled principle that in reviewing a claim brought under section 301 of the National Labor Management Relations Act ("LMRA") alleging the violation of a collective bargaining agreement, courts should be hesitant to vacate a decision reached by an arbitrator. Indeed, we have previously held that a grievance committee decision or an arbitration award "cannot be overturned as long as it is based upon some support in the record." International Longshoremen's Ass'n v. Cataneo, Inc., 990 F.2d 794, 799 n. 11 (4th Cir.1993); see also United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596-97 (1960). That settled principle of judicial deference to an arbitrator's decision is premised on the "well-recognized policy of federal labor law favoring arbitration of labor disputes." Adkins v. Times-World Corp., 771 F.2d 829, 831 (4th Cir.1985), cert. denied, Adkins v. Times-World Corp., 474 U.S. 1109 (1986).
 
 III. Discussion
 
 10
 Hypes alleges that the Court should vacate the arbitrator's award in the instant case pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. Secs. 1-16.* Because the Arbitration Act is inapplicable to the judicial review of awards arising from collective bargaining agreement-mandated arbitration proceedings, however, we properly review the District Court's grant of summary judgment under section 301 of the LMRA, 29 U.S.C. Sec. 185. See United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc., 889 F.2d 940, 943-44 (10th Cir.1989) (finding that an employee is barred from seeking judicial enforcement of an arbitrator's award under the Arbitration Act, but not under section 301, because a collective bargaining agreement is a "contract of employment," and thus is explicitly excluded from the scope of the Arbitration Act); Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1162 (7th Cir.1984), cert. denied, Miller Brewing Co. v. Brewery Workers Local Union No. 9, 469 U.S. 1160 (1985) (holding that section 301 supersedes the Arbitration Act because section 301 was enacted long after the Arbitration Act and deals specifically, as the Arbitration Act does not, with labor contracts).
 
 
 11
 Section 301 of the LMRA, by its plain language, governs suits alleging violations of contracts between an employer and a labor organization representing an injured employee. Amburgey v. Consolidation Coal Co., 923 F.2d 27, 29 (4th Cir.1991). Because the petition to vacate the arbitrator's award in the instant case essentially challenges Cyprus's right to discharge Hypes under the terms of the NBCWA, the action is therefore properly characterized as a suit against an employer for breach of a collective bargaining agreement, and is thus appropriately governed by the standard for vacating arbitration awards set forth in section 301 of the LMRA. See Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1060 (9th Cir.1989) (finding that a federal wrongful discharge claim is effectively a suit for breach of a collective bargaining agreement, and thus states a claim under section 301).
 
 
 12
 The law is well settled that in order to recover against an employer or union under section 301 for breach of a collective bargaining agreement, an employee must prove two facts: (1) that the union breached its duty of fair representation, and (2) that the employer breached the terms of the collective bargaining agreement. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976); Vaca v. Sipes, 386 U.S. 171 (1967); Amburgey v. Consolidation Coal Co., 923 F.2d 27, 29 (4th Cir.1991). The rationale underlying that two-part test is simple: (1) because federal labor law policy favors the voluntary adjustment of disputes arising under a collective bargaining agreement, decisions reached in such arbitrations will be vacated only where the union has failed fairly to represent the union member in the underlying dispute against the employer, Amburgey, 923 F.2d at 29; and (2) because most collective bargaining agreements, such as the NBCWA, accord finality to grievance or arbitration procedures set forth in the collective bargaining agreement, an employee normally cannot bring a section 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of the grievance. Terry, 494 U.S. at 564.
 
 
 13
 In evaluating whether a union has breached its duty of fair representation, courts generally afford great deference to the union's handling of the grievance at issue. Indeed, the Supreme Court has held that for a union to breach its duty of "fair representation" within the meaning of section 301, its conduct in handling the grievance must be "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. at 190. In essence, a union breaches its duty under that standard only if it ignores a union member's complaint or represents the union member "in a perfunctory manner." Id. at 194.
 
 
 14
 Under the Vaca standard, successful proof of a breach of the duty of fair representation by a union "involves more than demonstrating mere errors in judgment." Hines, 424 U.S. at 571. Indeed, because federal labor law favors the adjustment by parties of disputes arising under collective bargaining agreements, federal courts "do not invade this domain on the complaint of an employee unless his union is 'grossly deficient' in its representation or'recklessly disregards' the employee's rights." Amburgey, 923 at 29, quoting Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 890-91 (4th Cir.1980). Under that standard, this Court has held, for example, that a union's refusal to process an employee's grievance on the belief that such grievance is unwarranted does not amount to "gross deficiency" or a "reckless disregard" of the employee's rights. Id. at 30. Indeed, in Amburgey, we specifically found that a union "is its members' representative, not their puppet, and its duty of fair representation is not a servitude to their individual whims." Id.; see also Vaca v. Sipes, 386 U.S. at 193-94 (finding that the union did not violate its duty of fair representation where the union pursued the employee's grievance into the fourth step of the collective bargaining agreement's procedure, but stopped pursuing the claim once it concluded that it could not successfully establish a case of wrongful discharge); Sear v. Cadillac Auto. Co., 654 F.2d 4, 7 (1st Cir.1981) (holding that a union's failure to appeal a final arbitration award did not amount to unfair representation within the meaning of section 301); Shane, 868 F.2d at 1060-61 (rejecting an employee's argument that his union, in accepting a settlement rather than proceeding to arbitration, breached its duty of fair representation).
 
 
 15
 Some courts, moreover, have held that a union's alleged breach of its duty of fair representation only warrants the vacation of an arbitration award where there exists a causal nexus between the alleged breach and the arbitrator's adverse award. In VanDerVeer v. United Parcel Service, Inc., 25 F.3d 403 (6th Cir.1994), for example, the Sixth Circuit, in affirming a lower court's grant of summary judgment in a section 301 case, held that in order to succeed on a section 301 claim, the discharged employee must additionally show that the union's breach of its duty of fair representation "tainted the decision of the hearing panel." 25 F.3d at 405. Specifically, the Court held:
 
 
 16
 [T]o establish a breach of fair representation, the plaintiff must meet the onerous burden of proving that the grievance process was "seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or other arbitrary conduct." Thus, if a union fails to present favorable evidence during the grievance process, this failure may constitute a breach of its duty only if that evidence probably would have brought about a different decision.
 
 
 17
 Id. (emphasis added), quoting Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 585 (6th Cir.1994), quoting Hines 424 U.S. at 570. In light of this causal nexus requirement, the Sixth Circuit found that the personal hostility of a union representative toward a union member did not sufficiently establish a prima facie case of unfair representation where there existed no evidence that the alleged hostilities actually tainted the arbitrator's decision. Id. Indeed, the only cases in which courts have found a sufficient causal nexus to warrant the vacation of an arbitrator's decision under section 301, have addressed instances in which the union has failed properly to inquire into an employee's grievance at all, by refusing to analyze the relevant facts or by refusing to question essential witnesses. See, e.g., Carpenter v. West Virginia Flat Glass, Inc., 763 F.2d 622, 625 (4th Cir.1985) (finding that the union breached its duty of fair representation by failing to contact the employee's doctor, where the critical issue in the employee's claim for reinstatement turned explicitly on whether he was physically able to work at the plant); Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 585 (6th Cir.1994) (finding that the union breached its duty of fair representation where the union's representative had completely failed to investigate the site of the accident underlying the employee's discharge, and where the union had failed to call "the one witness who could have effectively and objectively corroborated [the employee's] testimony on a vital matter").
 
 
 18
 Accordingly, we address the District Court's decision in the instant case to grant summary judgment in favor of Cyprus. First, Hypes, by failing to allege or present any specific evidence that the UMWA breached its duty of fair representation to him, severely misconstrued the nature of a section 301 action. Indeed, in light of the well-settled principle that a section 301 action can succeed only if the union did not provide Hypes with fair representation, Hypes's extensive arguments regarding the soundness of the arbitrator's reasoning in denying his grievance are irrelevant. Even under Hypes's version of the facts of the case, there thus exists no genuine issue of material fact suggesting that the UMWA breached its duty of fair representation to Hypes. Hence, we affirm the District Court's grant of summary judgment.
 
 
 19
 Second, the record suggests that the UMWA did in fact affirmatively represent Hypes fairly during his arbitration proceeding. The record shows, and Hypes concedes, that the UMWA properly processed his grievance, and having exhausted the pre-arbitration grievance procedure set forth in the NBCWA without settlement, submitted the grievance to arbitration. At the arbitration hearing, moreover, the parties to the grievance properly cross-examined the witnesses, introduced exhibits, and made arguments. The UMWA's conduct therefore does not allow it to fall into the narrow category of cases in which unions, by egregiously ignoring evidence in favor of the employee or failing to process a grievance at all, breach their duty of fair representation within the meaning of section 301.
 
 
 20
 Third, the UMWA's failure to appeal the arbitrator's adverse decision does not amount to a breach of the duty of fair representation. Indeed, the law is well settled that, as long as the union believed that pursuing the case further was unwarranted, it was privileged not to pursue it. See Amburgey, 923 F.2d at 30. Hypes does not have an absolute right to appeal an adverse arbitration award.
 
 
 21
 Fourth, even if the arbitrator's refusal to afford res judicata effect to the prior arbitration award had any legal relevance to this section 301 claim, his refusal to do so clearly did not result in a "sham" hearing, as alleged by Hypes. Indeed, this Court has expressly held:
 
 
 22
 Not only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well. A legal interpretation of an arbitrator may only be overturned where it is in manifest disregard of the law. An arbitration award is enforceable "even if the award resulted from a misinterpretation of the law, faulty legal reasoning or erroneous legal conclusion," and may only be reversed "when arbitrators understand and correctly state the law, but proceed to disregard the same."
 
 
 23
 Upshur Coals Corp. v. United Mine Workers, Dist. 31, 933 F.2d 225, 229 (4th Cir.1991) (citations omitted) (emphasis added). In the instant case, the arbitrator's measured decision that the prior arbitration award did not have res judicata effect does not amount to such a "manifest disregard of the law."
 
 Hence, the judgment is
 
 24
 AFFIRMED.
 
 
 
 *
 Section 10 of the Federal Arbitration Act provides that a court can vacate certain arbitration awards: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption on the part of the arbitrator; (3) where the arbitrator was guilty of misconduct; or (4) where the arbitrator exceeded his powers. 9 U.S.C. Sec. 10