**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES E. THOMPSON,
            *Plaintiff-Appellant,*

v.

ALUMINUM COMPANY OF AMERICA;
UNITED STEELWORKERS OF AMERICA,
AFL-CIO CLC; UNITED
STEELWORKERS LOCAL 303,
            *Defendants-Appellees.*

No. 01-1617

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-99-943-1)

Argued: December 5, 2001

Decided: January 22, 2002

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Fred Thurman Hamlet, Sr., Greensboro, North Carolina,
for Appellant. Pamela W. Connelly, LEBOEUF, LAMB, GREENE &
MACRAE, L.L.P., Pittsburgh, Pennsylvania, for Appellee Alcoa;
Arlus Jeremiah Stephens, Assistant General Counsel, UNITED

STEELWORKERS OF AMERICA, Pittsburgh, Pennsylvania, for Appellee Union. **ON BRIEF:** William V. Conley, LEBOEUF, LAMB, GREENE & MACRAE, L.L.P., Pittsburgh, Pennsylvania, for Appellee Alcoa.

---

**OPINION**

GREGORY, Circuit Judge:

James E. Thompson appeals the district court's order granting summary judgment in favor of his employer, Alcoa Inc., and in favor of the Union appellees, United Steelworkers of America, AFL-CIO-CLC and United Steelworkers, Local 303. The district court dismissed Thompson's complaint, which was filed against Alcoa for breach of contract pursuant to Section 301 of the Labor Management Relations Act and against the Union for breach of its duty of fair representation. Because there is no evidence to support Thompson's claim against the Union for breach of its duty of fair representation, we affirm.

I.

Appellant James Thompson was employed by Alcoa in 1980 at its Mobile, Alabama plant. In 1983, following layoffs in Mobile, he transferred to Alcoa's Badin, North Carolina plant. The United Steelworkers of America have represented Alcoa employees since 1942. The Badin plant is covered by a master agreement between Alcoa and the Union, which is administered by Local Union 303.

At the Badin plant, Thompson worked as a pot tender and a pot servicer. Both jobs exposed Thompson to smoke, fumes, dust, hydrogen fluoride gases, sulfur, coal tar, various oxides, and other chemicals. Sometime in 1986 or 1987, Thompson began having pulmonary problems at work. In June of 1995, he filed a workers' compensation claim asserting that his asthmatic condition was the result of exposure to toxic fumes at the Badin plant. Alcoa denied his claim, taking the position that his medical problems were not work-related.

In November 1995, Thompson informed the potroom safety coordinator that he could not wear the forced-air respirator required for

pot servicers. He argued that his asthmatic condition made wearing a respirator unsafe. Alcoa attempted to fit Thompson with various breathing masks, but Thompson claimed they did not help. On November 17, 1995, Thompson was disciplined for allegedly refusing to wear a mask while working. A five day suspension was approved, and as a result, Thompson filed Grievance 1844.

As a result of the grievance, Alcoa sent Thompson to see a company doctor, Dr. Landis in Charlotte, North Carolina. Dr. Landis prepared a report for Alcoa in which he corroborated Thompson's assertion that he was having difficulty breathing at work. However, Dr. Landis reported that it was unclear whether this problem was caused by Thompson's employment at Alcoa. Alcoa then determined that Thompson was unable to work under the job requirements, which required him to wear a mask at all times.

On January 29, 1996, Alcoa removed Thompson from his pot servicer position and placed him on sickness and accident (S&A) leave. Thompson was told that there were no other positions available in Badin at that time. While not working, Thompson was supposed to draw S&A pay.

At the time he was placed on S&A leave, Thompson made an oral request to transfer to Alcoa's plant in Point Comfort, Texas, pursuant to Section 80(1)(c)[1] of the union contract. Alcoa refused his oral request, arguing that Section 80 did not apply because there had been no determination that Thompson's medical condition was in fact work-related.

---

[1]Section 80 applies to employees who cannot work because of an on-the-job injury, "because of a disability attributable in whole or in part to employment with the Company." If the injured employee can perform a lower-paying job at his plant, Alcoa must pay him a wage enhancement so as to prevent a loss in his hourly rate of pay. Section 80 also contains a transfer provision. If there is no available work for the injured employee at his home plant, the employee may transfer to another plant that has work available and is currently hiring. Any medical dispute over an employee's eligibility for Section 80 benefits may be resolved by an independent third-party doctor who will render a final decision.

Two weeks after Alcoa's refusal of his transfer request, Thompson left North Carolina, returning to Alabama so that his parents could help support him and his two children. He failed to pursue the grievance procedure by never requesting that a union representative appeal his supervisor's denial of his transfer request.[2]

Thompson remained in Alabama for the next year and a half on S&A leave. On July 7, 1997, he was recalled to the Badin plant to work as a caster helper, a position at a lower job grade and lower hourly rate. Shortly after his return, on July 24, 1997, Thompson approached a Local 303 official and filed Grievance 1969, alleging a violation of Section 80 for the 1996 denial of his transfer request. Grievance 1969 stated, "Employee was put out of plant due to a medical reason. Company never offered alternative work, per contract language." Grievance 1969 reported the date of the alleged incident as July 24, 1997, the same day the grievance was initiated. Thompson sought to be moved to Point Comfort, Texas.[3]

---

[2]Article XIII of the collective bargaining agreement details the grievance procedures at Badin. It provides three steps an employee can take to raise a complaint regarding application of the agreement. Step 1, which Thompson completed, requires an employee to orally present the grievance to his immediate supervisor. The supervisor is required to give an immediate oral answer. If the employee is not satisfied with the supervisor's answer, a union representative is empowered to appeal the grievance to Step 2, which involves a written appeal discussed by the representative and a Works Manager. If the grievance is still not resolved, it can be taken to Step 3. At Step 3, the union representative discusses the matter with the company's Manager of Industrial Relations. If a grievance is denied at Step 3, the Union has the option to seek arbitration.

Thompson was allegedly aware of these procedures—he had filed at least five grievances prior to 1996. Additionally, while Thompson was on S&A leave, he did not immediately receive his benefits, so he filed Grievance 1855 through the Local 303. Thompson prevailed, and received a lump sum for the arrearage.

[3]A week after filing Grievance 1969, Thompson filed Grievance 1978, in which he protested Alcoa's failure to pay him an enhanced hourly rate, again in reliance on Section 80. This grievance listed the date of incident as July 7, 1997, the day he returned to work.

Alcoa denied Grievance 1969 at Step 2 of the grievance procedure. Subsequently, Thompson's workers' compensation claim was resolved on April 20, 1998.[4] Therefore, another Step 2 meeting was held to address his grievance in light of the resolution. Alcoa again denied Grievance 1969, and so a Step 3 meeting was held in January of 1999. Alcoa denied the grievance at Step 3, based on two findings. First, because Alcoa had disputed Thompson's contention that his asthma was work-related in January 1996, the company asserted that Section 80 did not apply. Second, when Grievance 1969 was filed in July of 1997, Thompson had resumed work at the plant, rendering Section 80 inapplicable.

Following Alcoa's denial of the transfer grievance at Step 3, the Union decided not to pursue arbitration. Union representative Joe Weber, who presented the case at Step 3, spoke with a Union Alcoa specialist, John Herron, about the case. Herron advised Weber not to seek arbitration because Thompson would not prevail. Herron testified that the problem with the grievance was that Thompson did not pursue it until he was already back at the plant working full time. Once Thompson was working in his new job, and especially after he received the wage enhancement, Herron believed that Alcoa had complied with the Section 80 mandate.

Thompson argues that Alcoa breached the collective bargaining agreement by denying the transfer requests made in January 1996 and July 1997. He also claims that the Union breached its duty of fair rep-

---

Months after settlement of Thompson's workers' compensation claim, Grievance 1978 was resolved when Alcoa began paying Thompson the wage enhancement. The settlement also resulted in Alcoa paying Thompson a lump sum representing the retroactive application of the wage enhancement to the time he filed the grievance in July 1997.

[4] The settlement of Thompson's workers' compensation claim provided that Alcoa pay Thompson $9000, with no deduction for the S&A benefits he received, that it acknowledge the compensability of his occupational asthma, and that the company be released from any future workers' compensation liability. The settlement did not resolve the pending grievances —it stated that Thompson could continue to pursue them and that Alcoa could continue to contest them.

resentation by failing to appeal Grievance 1969 to arbitration. He filed an action in state court, which was removed to the United States District Court for the Middle District of North Carolina. Following discovery, the defendants moved for summary judgment, which was granted on March 30, 2001.

## II.

On appeal, decisions granting summary judgment are reviewed *de novo. JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In reviewing the evidence, we draw all reasonable inferences in favor of Thompson, the non-moving party. We make no credibility determinations, and we do not weigh the evidence. *Edell & Assoc., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435 (4th Cir. 2001). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

Thompson filed this action against Alcoa for breach of contract pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and against the Union for breach of its duty of fair representation. This is a so-called "hybrid 301" action, where in order to prevail on the merits against either party, an employee must prove *both* 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164-65 (1983). Though both claims are brought in one suit, a cause of action "will only lie against an employer if the union has breached its duty of fair representation of the employee." *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991) (citing *Vaca v. Sipes*, 386 U.S.

171, 186 (1967)).[5] Accordingly, an employee "must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer." *United Parcel Service , Inc. v. Mitchell*, 451 U.S. 56, 67 (1981) (Stewart, J., concurring). Because Thompson cannot demonstrate that the Union breached its duty of fair representation when it declined to appeal Grievance 1969 to arbitration, we affirm the district court's grant of summary judgment in favor of Alcoa and the Union.

## A.

Thompson's claims against the Union and Alcoa are "interlocked: neither claim is viable if the other fails." *See Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997). However, we first address the claim against the Union, because federal courts review allegations against employers for breach of collective bargaining agreements *only* when an employee has first proved that the union representing him breached its duty of fair representation. *Vaca*, 386 U.S. at 186.

It is well established that unions, as exclusive bargaining agents in the negotiation, administration and enforcement of collective bargaining agreements, have an implicit duty "to serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177 (citing *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)), *see also* 29 U.S.C. § 159(a). Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these requirements represents a distinct and separate obligation. *Griffin v. Int'l Union*, 469 F.2d 181, 183 (4th Cir.

---

[5]This rule is based on federal labor law policy, which favors adjustment by the parties of disputes arising under collective bargaining agreements. "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes." *Amburgey*, 923 F.2d at 29 (quoting LMRA § 203(d), 29 U.S.C. § 173(d)). "Federal courts do not invade this domain on the complaint of an employee unless his union is 'grossly deficient' in its representation or 'recklessly disregards' the employee's rights." *Id.* (quoting *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 890-91 (4th Cir. 1980)).

1972). From our review, we find that Thompson has demonstrated no facts from which we can infer that the Union's actions, in deciding not to appeal Grievance 1969 to arbitration, were arbitrary, discriminatory, or in bad faith.[6]

To begin, the evidence does not establish that the Union's decision not to appeal Grievance 1969 to arbitration was arbitrary. To be "arbitrary," a union's conduct towards its member must be so far outside a wide range of reasonableness that it is wholly irrational. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991). The facts here show that Union representatives, in deciding not to pursue arbitration, considered the collective bargaining agreement, reviewed the record, and based their decision on Thompson's status as a working employee. When Thompson returned to Badin and filed Grievance 1969 in July 1997, he was no longer removed from employment—he had been recalled and was working again in the Badin plant.[7] Transfers to other Alcoa plants are available under Section 80(1) only when an employee has been removed from his job, and only "[i]n the event no available job exists in the plant."[8] Since Thompson was working at the plant, a job obviously existed there. Thompson even acknowledged that under Section 80, "If you're working at Badin or at another Alcoa location, you're not eligible to turn in a transfer request." J.A. at 530. Therefore, the Union's failure to seek arbitration in this matter

---

[6]In his appellate brief, Thompson asserts that the Union defaulted in its duties to him in the handling of four grievances. We note that in his complaint, Thompson only claims that the Union breached its duty of fair representation by refusing to appeal Grievance 1969 to arbitration. Thus, we confine our review to that issue.

[7]We note that it is sometimes helpful to look at the *arguable* merits of a union's proffered interpretation of a collective bargaining agreement in order to determine whether a union breached its duty of fair representation in failing to arbitrate a grievance. *Ooley v. Switzer Div., Household Mfg., Inc.*, 961 F.2d 1293, 1298 (7th Cir. 1992). Though we decline to do so here, where a court is well able to decide that the employee's contractual claim lacks merit as a matter of law, it is appropriate for the court to decide the case on that issue. *Id.*

[8]The right to transfer does not constitute a vested bonus or benefit, but exists as a last resort to allow eligible employees to continue earning a paycheck.

hardly rises to the level of irrational. The Union officials here did not ignore a meritorious grievance, they made a decision not to press a grievance they believed had no chance of success. An employee has no absolute right to insist that his grievance be taken to a certain level; a "union may screen grievances and press only those that it concludes will justify the expense and time involved in terms of benefitting the membership at large." *Griffin*, 469 F.2d at 183.

We add that even if we were to assume that Grievance 1969 had merit and the Union should have appealed it to arbitration, "a union's exercise of its judgment need not appear as wise in the glaring light of hindsight, and a violation of the duty of fair representation is not made out by proof that the union made a mistake in judgment." *Smith v. Local 7898, United Steelworkers of America*, 834 F.2d 93, 96 (4th Cir. 1987). As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation. *Griffen*, 469 F.2d at 183. The Union did not ignore Thompson's grievance—it initiated the grievance at Thompson's request, participated in two Step 2 hearings, appealed the grievance to Step 3 and participated in the Step 3 hearing with Thompson. Union officials decided not to appeal the grievance to arbitration only because they believed Thompson would not prevail.

While the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of discrimination and bad faith must focus on the subjective motivation of the union officials. *Crider*, 130 F.3d at 1243. Having reviewed the record and the briefs, and having had the benefit of oral argument, we find no evidence that Union officials discriminated against Thompson in any way or acted with bad faith when they decided not to appeal Grievance 1969 to arbitration.

### B.

Our conclusion that the Union did not breach its duty of fair representation resolves the case for Alcoa as well. Although not essential to the resolution of this appeal, we agree with the district court's conclusion that Thompson cannot show Alcoa breached the collective bargaining agreement when it refused to transfer him to its Point

Comfort, Texas plant. In 1996, at the time Alcoa first denied Thompson's transfer request, it was operating under the assumption that Thompson's health problems were not work-related. Under Section 80 of the collective bargaining agreement, transfers are required *only* when the injury is caused by work. Hindsight always being twenty-twenty, we know now that Thompson's condition was in fact work-related. However, at the time, there had been no such determination.[9] Furthermore, as discussed above, when Thompson filed Grievance 1969 in July 1997, he had resumed work and was no longer eligible under the contract for a transfer.

## IV.

The facts, even in the light most favorable to Thompson, show that when Thompson filed Grievance 1969 in July 1997 he had already resumed working and was no longer eligible for a transfer. There are no facts from which we can infer that the Union, in declining to appeal the grievance to arbitration, acted arbitrarily, discriminatorily, or in bad faith. Thompson therefore cannot show that the Union breached its duty of fair representation. Thus, his hybrid 301 suit against the Union and Alcoa must fail. Accordingly, the order of the district court is affirmed.

*AFFIRMED*

---

[9]Section 80(1)(d) of the Agreement states that if a dispute arises over an employee's disability or medical condition, the company's medical representatives shall make the initial determination on whether condition is work-related. If that determination is disputed by the Union, the matter shall be referred to a mutually-designated physician or medical center for a final binding determination.

The company's doctor, Dr. Landis, had stated in a letter to the company that he could not determine that Thompson's pulmonary problems were the result of Thompson's employment at Alcoa. Thompson then left Badin shortly after his transfer request was denied without pursuing the grievance procedures that were available to him under the contract.