**SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff–Appellant,**

v.

**SCHIPPOREIT, INC., et al., Defendants–Appellees.**

**No. 95–1405.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1995.

Decided Nov. 17, 1995.

Peter E. Kanaris (argued) and Lawrence D. Mason, Kostow & Daar, Chicago, IL, for Plaintiff–Appellant.

William P. Suriano (argued), Riverside, IL, for Intervenor–Appellee.

Before WOOD, Jr. ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This case concerns the efforts of the La-Salle Street Church to intervene as of right in a declaratory judgment action brought by the Security Insurance Company of Hartford against George Schipporeit and Schipporeit, Inc., whom we'll refer to collectively as "Schipporeit." Security sought a determination in federal court that it had no duty to either defend or indemnify Schipporeit in an Illinois state court action brought against Schipporeit by LaSalle. LaSalle sought to intervene in the federal declaratory judgment action when Security filed for a default judgment of no coverage due to Schipporeit's failure to appear and defend Security's claims. The district court granted LaSalle's petition to intervene, denied Security's motion for default judgment, and ultimately, after a bench trial, ruled in favor of LaSalle on the merits. We affirm.

In 1985, LaSalle retained Schipporeit, an architectural firm, to renovate the roof of its church. Schipporeit designed the new roof and selected a contractor, Esko & Young, to install it. Work on the roof was completed in 1986. In February of 1987, approximately one-sixth of the roof was blown off in a storm. Esko & Young admitted that the roof had not been installed according to written specifications. The contractor repaired the part of the roof that had been damaged by the storm, but was unwilling to reinstall the entire roof at that time.

Dissatisfied with the fact that much of its new roof was still defective, LaSalle asserted claims against Schipporeit and the contractor. Schipporeit notified Security, its professional liability insurance carrier, of the claim against it at that time, and Security participated in at least one mediation session called to attempt to settle the dispute. At one point in the mediation process, a tentative agreement was discussed; Esko & Young would provide the labor needed to replace the roof, and the $15,000 cost of materials would be divided between Esko & Young, LaSalle, and Schipporeit. Esko & Young at first agreed to the arrangement but never actually performed any additional remedial work on the roof. The contractor has since assigned its assets for the benefit of its creditors. Security recommended that Schipporeit participate in this arrangement and personally pay $5,000, a sum within its deductible under the policy. Schipporeit refused and the mediation efforts ran out of gas.

In March of 1988, Joseph Dodson, Security's man during the mediation efforts, closed his claim file on the dispute. This was ill-

advised because LaSalle filed suit against Schipporeit and Esko & Young in Illinois state court in the fall of 1989. *LaSalle Street Church v. Schipporeit, Inc., et al.,* Circuit Court of Cook County Case No. 89 L 12550. Security did not get wind of the state court suit until 1993, when Schipporeit notified it that he had been sued. Schipporeit, at that time, had no significant assets except for the Security policy. Security took up Schipporeit's defense in state court under a reservation-of-rights provision in the policy.

Upon learning of the state court suit against Schipporeit, Security got busy on another front; it filed this declaratory judgment action in the federal district court for the Northern District of Illinois. Security argued that it was justified in denying coverage to Schipporeit for LaSalle's claims due to: (1) Schipporeit's failure to notify Security of the lawsuit in a timely fashion; (2) Schipporeit's breach of its contractual duty to cooperate with the insurer; and (3) Schipporeit's rejection of the mediation proposal, which Security characterized as a settlement offer. Schipporeit failed to make an appearance, and Security moved for a default judgment. LaSalle, sensing danger to its interests, moved to intervene in the suit as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). The case was heard by Judge James B. Zagel, who allowed LaSalle to intervene as of right and denied Security's motion for a default judgment. After a bench trial, the court ruled in favor of Schipporeit and LaSalle, holding that Security had a duty to defend and indemnify Schipporeit in the state court case. On appeal, Security argues that the district court erred in permitting LaSalle to intervene as of right and that, even if intervention was appropriate, the district court erred in its disposition of the coverage issue.

■ Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that "anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect

that interest, unless the applicant's interest is adequately represented by existing parties." An applicant for intervention under the rule must demonstrate that each of four requirements is met: (1) the application is timely; (2) the applicant has an "interest" in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest. *United States v. City of Chicago,* 798 F.2d 969, 972 (7th Cir.1986); *United States v. 36.96 Acres of Land,* 754 F.2d 855, 858 (7th Cir.1985). There is no dispute in this case as to the timeliness of LaSalle's application to intervene as of right, nor does Security contend that any interest LaSalle may have is being adequately represented by an existing party. Security does argue that LaSalle fails to meet the second and third requirements for intervention as a matter of right.

■ The real question, then, is whether LaSalle has an interest in the underlying determination of whether the Security policy covers LaSalle's claims against Schipporeit. After all, if LaSalle does have the necessary interest, it is difficult to argue that that interest would not be jeopardized by a default judgment against Schipporeit. Judge Zagel stated that he could not "imagine a more pressing, more clear, and more obvious interest than the LaSalle Street Church has in this case." We review the district court's determination of interest *de novo. Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994).

■ The "interest" required by Rule 24(a)(2) has never been defined with particular precision. An early attempt by the Supreme Court to define interest in the context of Rule 24(a)(2) tells us only that an "interest" is a "significantly protectable interest." *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Later decisions in this circuit reveal that the interest of a would-be intervenor must be a "direct, significant, legally protectable" one. *American Nat'l Bank v. City of Chicago,* 865 F.2d 144, 146 (7th Cir.1989). It is something more than a mere "betting" interest (*Reich v.*

*ABC/York Estes Corp.*, 64 F.3d 316 (7th Cir. 1995)), but less than a property right (*United States v. City of Chicago*, 870 F.2d 1256, 1260 (7th Cir.1989)). Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value. *Reich*, 64 F.3d at 321; *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir.1994)).

Although, as we have noted, the fact-specific analysis of "interest" for intervention purposes makes comparing cases a venture of dubious worth, we can't help but note that the facts in our case are identical to those presented 22 years ago to a savvy district judge named Bauer in *Hartford Accident and Indemnity Co. v. Crider*, 58 F.R.D. 15 (N.D.Ill.1973). Intervention was permitted in *Crider*; for the same reasons, Judge Zagel was correct in allowing it here. Security opposed LaSalle's petition to intervene because it wanted a quick, unopposed adjudication that it had no obligation to defend or indemnify Schipporeit. And Security, it seems, was on the verge of obtaining that result. It wanted to play the Washington Generals and get out of town with a quick win. The district court wisely allowed a more worthy opponent to get into and onto the court.

█ Before we leave the issue of intervention, we hasten to add a point. Even if we were to find intervention as of right by La-Salle to be erroneous, permissive intervention under Federal Rule 24(b)(2) would be perfectly appropriate. Rule 24(b)(2) states that permissive intervention may be allowed "when an applicant's claim or defense and the main action have a question of law or fact in common." The rule goes on to note that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

█ Two requirements must be met before a court may exercise its discretionary power to grant intervention under 24(b)(2). The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction.

*Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir.1975). Other than these two requirements, which are clearly met in this case, intervention under 24(b)(2) is entirely discretionary. *Keith v. Daley*, 764 F.2d 1265, 1272 (7th Cir.1985).

█ In exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties. It is hard to see how those rights might be compromised in this case. Security can hardly be said to be prejudiced by having to prove a lawsuit it chose to initiate. Indeed, it is the policy of this circuit to favor trials on the merits over default judgments. *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984).

By contrast, the benefits of allowing La-Salle to intervene are considerable. Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding. In this case, denial of intervention would in all likelihood have created additional litigation and the possibility of conflicting results. If the district court had denied intervention, Security would probably have won, by default, a judgment that it had no duty to defend or indemnify Schipporeit for LaSalle's claims. From the record, it seems probable that Schipporeit would not have defended against LaSalle in the state court action. LaSalle could then have sought, and probably obtained, a default judgment in its state court action. With that judgment in hand, LaSalle could have sought to intervene in federal court and have Security's default judgment set aside. If LaSalle won a declaration of coverage, Security would then have had grounds to seek to set aside the state court default judgment against Schipporeit. Judge Zagel skillfully avoided this sort of endless, circular, and unnecessary litigation. Intervention enabled the court to address important issues in this case once, with fairness and finality. So even if intervention as of right here were error, we would not disturb Judge Zagel's decision because he could have acted under a differ-

**1382**

ent subsection of Rule 24 and reached the same result.

■ Security contends that, even if intervention by LaSalle was appropriate, it had no duty to defend or indemnify Schipporeit because various provisions of the insurance policy were breached. Security presents three arguments in support of this contention, the first being that Schipporeit violated the notice provision of the policy. We disagree with Security and agree instead with the district court that Schipporeit satisfied the policy's notice requirement. The relevant language of the policy states:

> In the event of a claim, the insured shall immediately give written notice to the Company, but in any event within 60 days after cancellation or non-renewal of the policy, whichever occurs first. As respects claims which are reported subsequent to cancellation or non-renewal, such claims must have arisen prior to such cancellation or non-renewal. . . . Such notice shall contain all details of the claim including, but not limited to, information with respect to the date, location and circumstances thereof, the names of all parties who claim or may claim damage or injury and a description of the nature and scope of such alleged damage or injury.

■ The interpretation of insurance policies is a matter of law. Under Illinois law, which we apply in this diversity case, the language of an insurance policy must be read according to its plain and ordinary meaning. *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d 1073 (1993). Any ambiguity in a policy must be resolved in favor of the insured. *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 284 578 N.E.2d 926, 930 (1991).

It is undisputed that Schipporeit notified Security of the initial claim against it by LaSalle, and that it did so in a timely manner. Security argues that Schipporeit had a contractual duty to provide the insurance company with some sort of additional notice when LaSalle sued in state court. A plain reading of the policy does not indicate that the insured is required to give multiple notices of a claim against it. Security may very

well have intended that multiple notices or even a specific notice of a lawsuit be given by one of its insured. As the drafter of the policy, it could have included terms like that in the policy. But Security failed to do so, and its subjective intent, at this point, is irrelevant. The plain language of the policy does not require multiple notices. Any ambiguity on this point must be resolved in favor of Schipporeit. Schipporeit initially notified Security of the claim against it in a timely fashion, and further notices of other events regarding the same claim were not required by the policy. Security's argument that it is justified in denying coverage due to Schipporeit's breach of the notification provision of the policy must fail.

■ Security next argues that Schipporeit breached its contractual duty to cooperate with the insurer, thereby forfeiting coverage for LaSalle's claim. The cooperation clause of the insurance policy, with our emphasis added, reads as follows:

> The insured shall cooperate with the Company. *Upon the Company's request,* the insured shall provide all information, records and documents *required* by the Company or its representatives for the investigation and defense of claims, shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives. The insured shall attend meetings with such representatives *when requested* for the purpose of investigation, defense or settlement, shall enforce any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or property damage with respect to which insurance is afforded under this policy. All of the above shall be provided without charge to the Company. The expense to the insured of the foregoing cooperation and assistance is not recoverable under this policy nor chargeable to the deductible.

A plain reading of this policy provision clearly conditions cooperation upon the insurer's request. The district court found as a matter of fact that Security failed to make demands on Schipporeit for cooperation. This finding is not clearly erroneous. The duty to cooperate is only triggered when the insurer demands cooperation. Because Security failed to make demands for cooperation, it may not argue that Schipporeit breached its duty to cooperate by failing to meet those nonexistent demands. Security's argument that it is justified in denying coverage due to Schipporeit's breach of the cooperation clause of the policy must also fail.

■ Security's final argument is that it was justified in denying coverage because Schipporeit failed to accept the recommended offer of settlement that grew out of the attempt to mediate the dispute. The relevant provision of the insurance policy reads:

> The Company shall not settle any claim without the written consent of the named insured, except for claims involving alleged libel or slander on the part of the insured. If, however, the named insured shall refuse to consent to any settlement recommended by the Company, and shall continue litigation at the trial level or at the appellate level in connection with such claim, then the company's liability for that claim shall not exceed the amount for which the claim would have been settled plus the cost and expenses incurred with the Company's consent up to the date of such refusal to settle.

This settlement language in the policy speaks to a relatively narrow situation. If an insured is presented with an opportunity to dispose of a claim and the insurer recommends that the claim be resolved, the insured may refuse to accept the insurer's recommendation only at his peril. The risk of loss over and above the proposed settlement passes to the insured. But the term "settlement" in this provision makes sense only if it means a full and final disposition of a claim, and that assumes that a release of liability will be issued.

LaSalle never agreed that it would issue a release to Schipporeit in exchange for a $5,000 payment. Rather, the testimony of LaSalle's witnesses demonstrated that any release was to be issued only as part of a global settlement which contemplated that Esko & Young would replace the damaged roof and contribute its share of the material costs.

Security, it seems, is attempting to broaden the settlement provision of the insurance policy to require an insured to accept every recommendation made, even if it would not have disposed of the entire case. Security would read the term "settlement" in the insurance contract to mean any agreement which might move the dispute toward ultimate resolution. The district court concluded that there never was a proposed "settlement" as that term is used in the insurance contract. Whether reviewed under a *de novo* or clearly erroneous standard, that finding must be affirmed.

For these reasons, the decisions of the district court allowing LaSalle to intervene, dismissing Security's motion for a default judgment, and finding that Security has a duty to defend and indemnify Schipporeit, minus the deductible, in the state court action are affirmed.