ALLEN–BRADLEY COMPANY, LLC and Reliance Motion Control, Inc., Plaintiffs,

v.

KOLLMORGEN CORPORATION, Defendant.

Kollmorgen Corporation, Counterclaim–Plaintiff,

v.

Allen–Bradley Company, LLC, Reliance Motion Control, Inc., and Rockwell International Corporation, Counterclaim–Defendants.

No. 99–C–0600.

United States District Court, E.D. Wisconsin.

March 27, 2001.

Richard S. Florsheim, Kurt S. Meckstroth, Paul S. Hunter, Milwaukee, WI, Jeffrey N. Costakos, Denver, CO, for Plaintiffs.

James T. Murray, Jr., Sherry A. Knutson, Milwaukee, WI, Harry Marcus, John A. Diaz, Alfred P. Ewert, Robert E. Paulson, Andrew M. Riddles, New York City, James Hwa, Washington, DC, for Defendant.

## DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

### I.  BACKGROUND

Plaintiffs Allen–Bradley Company, L.L.C. and Reliance Motion Control, Inc. ("Allen–

Bradley") commenced this action when, on June 1, 1999, they filed a complaint seeking a declaratory judgment of non-infringement of certain patents owned by defendant Kollmorgen Corporation ("Kollmorgen"). Kollmorgen filed an answer and asserted counterclaims against Allen–Bradley, alleging infringement of some of the patents. A series of dismissals left only two patents, the '437 and the '771, before the court. The court held a *Markman* hearing on November 1, 2, 3, 6, 28, 29 and 30, 2000. During the course of the hearing, the court heard the arguments of counsel as well as the testimony of the parties' experts. On December 22, 2000, the court entered an order construing the claims of the two patents.

A number of events have transpired since the court entered its order. Allen–Bradley and Kollmorgen entered into settlement negotiations and have, according to the parties, reached an agreement that is conditioned upon this court's vacating its claim construction order. At a February 13, 2001, scheduling conference before this court, Kollmorgen asked that the court's December 22, 2000, order be vacated so that the settlement may be finalized. Allen–Bradley indicated that it did not oppose Kollmorgen's request.

The '437 and '771 patents are also the subject of a patent infringement · action brought by Kollmorgen in the Western District of Virginia, *Kollmorgen Corp. v. Yaskawa Electric Corp.*, No. 7:99–CV–00308, 1999 WL 1678229 (W.D.Va. filed 1999). The defendants in that action, Yaskawa Electric Corporation and Yaskawa Electric America (collectively "Yaskawa") now seek to intervene, pursuant to Fed.R.Civ.P. 24(a)(2), in the above-captioned action before this court for the limited purpose of opposing Kollmorgen's motion to vacate.

Currently before the court are (1) Yaskawa's motion to intervene (and motion for oral argument on such motion) and (2) Kollmorgen's motion to vacate this court's December 22, 2000, order.

## II. MOTION TO INTERVENE

■ Under Rule 24(a), an applicant has a right to intervene only when the applicant has demonstrated each of the following: (1) that the application is timely; (2) that the applicant has an "interest" in the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impair or impede the applicant's ability to protect that interest; and (4) that no existing party adequately represents the applicant's interest. See *Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir.1995).

The lynchpin of the court's substantive inquiry in Rule 24(a) motions is the question whether the applicant has an "interest" in the underlying subject of the action. Yaskawa asserts an interest in the collateral estoppel effect of this court's claim construction order. Yaskawa has filed a motion in the Western District of Virginia requesting that this court's order be adopted as controlling. For purposes of this decision, the court assumes, without deciding, that its earlier order in fact has the preclusive effect that Yaskawa asserts.

■ "The 'interest' required by Rule 24(a)(2) has never been defined with particular precision." Security Insurance, 69 F.3d at 1380. See also Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1908 (2d ed.1986) ("There is not as yet any clear definition, either from the Supreme Court or from the lower courts, of the nature of the 'interest relating to the property or transaction which is the subject of action' that is required for intervention of right."). While "the fact-specific analysis of 'interest' for intervention purposes makes comparing cases a venture of dubious worth," Security Insurance, 69 F.3d at 1380, there are nonetheless certain general types of interests that courts have been unwilling to recognize as sufficient for purposes of Rule 24(a). Courts have held that the applicant's interest in the collateral estoppel effect of a court's judgment is one that is "too collateral, indirect and insubstantial to support intervention as of right." *Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508 (11th Cir.1996). This court agrees, and denies Yaskawa's motion to in-

tervene, as well as Yaskawa's motion for oral argument.

Rule 24(b) provides for permissive intervention. Yaskawa does not, however, ask the court to exercise its discretion under Rule 24(b), and the court declines to exercise that discretion *sua sponte*.

### III. MOTION TO VACATE

■ Kollmorgen requests that the court vacate its December 22, 2000, order construing the claims of the '437 and '771 patents. According to the parties, they have negotiated a settlement with regard to this action. The settlement is, however, contingent upon this court's vacating its claim construction order.

In *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), the Supreme Court discussed the effects of vacatur upon both settlement and judicial economy. The Court explained that,

> while the availability of vacatur may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed), it may **deter** settlement at an earlier stage. **Some** litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal.

*Id.* at 27–28, 115 S.Ct. 386 (emphasis in original).

*U.S. Bancorp* is not "on all fours" with the present action. At issue in *U.S. Bancorp* was the authority of an appellate court to vacate judgments, decrees, or orders of lower courts. That authority is derived from a specific statute that deals only with the vacatur power of "[t]he Supreme Court or any other court of appellate jurisdiction." 28 U.S.C. § 2106. Much of the underlying justification for both the statute and the Court's opinion may nonetheless be usefully employed in determining whether to grant the present motion for vacatur.

The Court in *U.S. Bancorp* emphasized that the availability of post-judgment vacatur may deter settlement at an earlier stage. But just as the availability of post-judgment vacatur by an appellate court may encourage some litigants to "roll the dice" rather than settle, so too may the availability of post-*Markman* hearing vacatur encourage the gambler within some litigants. They may well decide to litigate the construction of the claims in the hope that the court's construction will be favorable to them. If they are ultimately disappointed, they can then come back to the court and ask that the order be vacated.

In terms of judicial economy, the difference between vacatur after judgment and vacatur before judgment, but after a *Markman* hearing and order, is only one of degree. In the instant case, the *Markman* hearing and subsequent order entailed (as such hearings and orders typically do) the expenditure of extensive judicial resources. Settlement that spares the court a *Markman* hearing will often save much more in terms of judicial resources than will settlement that obviates the need for a trial or entry of judgment in a non-patent case. If settlement is valued because it conserves judicial resources, then the inquiry should be not whether judgment has been entered but rather how much time and effort the court has expended before the settlement-motivated vacatur is sought.

To be sure, it may be maintained that, to the extent refusing to vacate the courts' order may frustrate the settlement reached by Allen–Bradley and Kollmorgen, such a refusal undermines the benefits of settlement to the present parties. "When the parties' bargain calls for judicial action, however, the benefits of settlement to the parties are not the only desiderata." See *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299, 1302 (7th Cir.1988). At least in the Seventh Circuit, great weight has been accorded the countervailing interest in judicial economy and the effect of the decision upon third parties. See *id.* at 1302.

In *Memorial Hospital*, the Seventh Circuit offered its only full explication of its views on vacating decisions and orders in order to facilitate settlement between litigants. Memorial Hospital was a provider of medical services that was entitled to Medicare reimbursement. Under the relevant statute, the government was permitted to make estimated reimbursement payments. If, after the actual entitlement was calculated, it was discovered that the provider was underpaid, the government made up the difference. If the provider was overpaid, the government simply reduced future estimated or final payments.

> The problem in [*Memorial Hospital*] arose because Memorial filed a bankruptcy petition after receiving estimated payments but before the final computation, which revealed that it had been overpaid. The [government's] fiscal intermediary proposed to reduce future payments as usual; Memorial remonstrated that the reduction would violate the 'automatic stay' in bankruptcy under 11 U.S.C. § 362(a)(3), (6). Instead of asking the bankruptcy court to lift the stay, or asking what course it should follow, the fiscal intermediary simply reduced the payments. The bankruptcy court held the intermediary in contempt of court, and the district court affirmed .... It ordered the intermediary to restore the funds it had withheld and to pay Memorial's costs and attorneys' fees.

*Id.* at 1301 (citation omitted). Sometime after the intermediary filed its notice of appeal, the parties settled their dispute. The bankruptcy court approved the settlement, and the parties filed a motion asking the Seventh Circuit to vacate the district court's opinion and judgment. See *id.*

The court of appeals rejected the request, explaining that "an opinion is a public act of the government, which may not be expunged by private agreement. History cannot be rewritten. There is no common law writ of erasure." *Id.* at 1300. The court went on to emphasize the systemic considerations that should inform a court's vacatur, explaining that "it may be inappropriate to approve a settlement that squanders judicial time that has already been invested.... The[ ] deci-

sions have persuasive force as precedent that may save other judges and litigants time in future cases." *Id.*

As with *U.S. Bancorp*, *Memorial Hospital* dealt with post-judgment vacatur by an appellate court. The underlying rationale for the decision, however, applies with equal force to the present action. In fact, another judge in this district has relied upon Memorial Hospital in deciding a pre-judgment motion for vacatur. In *Home Indemnity Co. v. Farm House Foods Corp.*, 770 F.Supp. 1348 (1991), the court had issued a decision and order granting partial summary judgment to Home Indemnity. Shortly thereafter, the parties agreed to settle the case on the condition that the court vacate its earlier decision and order. Judge Reynolds denied the parties' joint motion to vacate that decision and order. In doing so, Judge Reynolds essentially relied entirely upon *Memorial Hospital* and stated, inter alia:

> *Memorial Hospital* instructs that this court's July 30th decision and order, like the bankruptcy and district court opinions in *Memorial Hospital*, is not the property of the parties... Rather, this court's decision may have potential value to numerous third parties not involved in this action, including other possible creditors who might be interested in the relationship between Farm House and Diana, and other judges who might find the decision instructive... These public interests are compelling, and this court must respect these interests by protecting the integrity of its decisions.

*Home Indemnity*, 770 F.Supp. at 1350

Of course, this court's order construing the claims of the '437 and '771 patents is no less a public act of the government than were the opinion and judgment in *Memorial Hospital* and the decision and order in *Home Indemnity*. Moreover, this court devoted a substantial amount of time and effort to the claim construction order. The *Markman* hearing itself consumed seven days of court time, and many additional hours were spent doing pre- and post-hearing research and writing the opinion itself. Given the substantial amount of time and effort typically entailed by *Markman* decisions, judicial econo-

my would be enhanced by structuring the incentives so as to encourage *pre-Markman* hearing settlement. The result sought by the parties in the present action would do just the opposite by encouraging litigants to test their proposed claim constructions via a full-blown *Markman* hearing and decision before settling, thereby relegating the court's *Markman* decision to the category of "advisory opinion."

Not vacating this court's *Markman* order also serves another valuable systemic purpose. Regardless of whether the decision has preclusive effect in another action involving the same patent claims[1], it might be of some yet undefined assistance to other judges and litigants in the future.

In sum, the court acknowledges the obvious value of settlement. Indeed, settlement of this action would save this court's time in the future (and for that reason alone, granting the defendant's motion to vacate presents considerable appeal). The court must be mindful, however, that its claim construction order, like nearly all court decisions and orders, affects interests beyond those of the parties in the present action. The benefits of settling the present action are, in short, outweighed by the systemic costs that would be incurred by vacating the court's order.

### IV. CONCLUSION

In conclusion, and for all of the foregoing reasons, the court denies applicant Yaskawa's motion to intervene, as well as its motion for oral argument, and denies defendant Kollmorgen's motion to vacate the court's December 22, 2000, order construing the claims of the '437 and '771 patents.

**NOW THEREFORE IT IS ORDERED** that applicant Yaskawa's motion to intervene be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Yaskawa's Rule 6.01(b) motion for oral argument be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion to vacate be and hereby is **DENIED**.

A conference to discuss the further processing of this action will be conducted on April 26, 2001, at 9:00 a.m.

---

1. Indeed, whether this court's *Markman* order would have preclusive effect is open to some debate. See *TM Patents, L.P. v. International Business Machines Corp.*, 72 F.Supp.2d 370 (S.D.N.Y.1999); *Graco Children's Products, Inc. v. Regalo International, LLC*, 77 F.Supp.2d 660 (E.D.Pa.1999); and *Abbott Laboratories v. Dey, L.P.*, 110 F.Supp.2d 667 (N.D.Ill.2000).