PENSION BENEFIT GUARANTY CORP., Plaintiff,

v.

SLATER STEELS CORP., Defendant.

No. 1:03CV420.

United States District Court, N.D. Indiana, Fort Wayne Division.

Feb. 24, 2004.

Brent P. Fraim, James J. Keightley, Stephen Schreiber and William G. Beyer, Pension Benefit Guaranty Corporation, Washington, DC, for Plaintiff.

Lawrence C. DiNardo and Michael J. Gray, Jones Day, Chicago, IL, for Defendant.

David L. Gore, Gore and Gore, Chicago, IL, for Intervenor Defendant.

## ORDER

COSBEY, United States Magistrate Judge.

Pending is a motion for leave to intervene filed by the United Steelworkers of America ("the Union"), on January 6, 2004. On February 9, 2004, Plaintiff, the Pension Benefit Guaranty Corporation ("PBGC"), filed an objection and on February 23, 2004, the Union replied.[1] For the following reasons, the motion to intervene will be granted.

## BACKGROUND

PBGC is a wholly-owned United States Government corporation established pursuant to 29 U.S.C. § 1302(a) to administer the

---

1. Defendant Slater Steels Corporation d/b/a Fort Wayne Specialty Alloys ("Slater") did not file a brief. The Union contends on page four of its brief that Slater supports the Union's intervention.

pension plan termination insurance program created by the Employee Retirement and Income Security Act ("ERISA"). *See* 29 U.S.C. § 1301–1461. Slater declared bankruptcy, meaning that it was unable to properly fund two employee pension plans ("the Plans"). Thus, on November 6, 2003, PBGC brought this ERISA action seeking to have the Court (1) terminate the Plans; (2) appoint PBGC trustee of the Plans (3) establish November 6, 2003, as the termination date of the Plans and (4) order the turn over to the PBGC of all Plan property, assets, and records. Before Slater filed its answer, the Union filed the pending motion to intervene.

## DISCUSSION

■ The Union seeks to intervene in accordance with Federal Rule of Civil Procedure 24(b)(2), which states in pertinent part:

Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Before a court may exercise its discretionary power to grant intervention under Rule 24(b)(2), the proposed intervenor must demonstrate a common question of law or fact and independent jurisdiction. *See e.g., Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir.1995). Other than these two requirements, intervention under Rule 24(b)(2) is entirely discretionary. *Id.* However, "Rule 24 should be liberally construed in favor of potential intervenors." *iWork Software, LLC v. Corporate Express, Inc.*, 2003 WL 22494851 at * 1 (N.D.Ill.2003). *See also, e.g., EEOC v. Regis Corp.*, 2001 WL 1911025 (N.D.Ill.2001); *United States v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 267 (E.D.Mich.1997).

Here, there is no question of the existence of a common question of fact and of law, *i.e.*, whether (and when) the Plans should be terminated.

■ As for the basis for independent jurisdiction, the Union principally relies on 29 U.S.C. 1303(f)(1), which provides in relevant part that:

any person ... adversely affected by any action of the corporation [the PBGC] with respect to a plan in which such person has an interest, or who is an employee organization representing such a participant or beneficiary so adversely affected for purposes of collective bargaining with respect to such plan, may bring an action against the corporation for appropriate equitable relief in the appropriate court.

In response, the PBGC contends that 29 U.S.C. § 1303(f)(1) is inapplicable as the USWA is not seeking equitable relief.

Notably, the Union is not asking for monetary damages from either PBGC or Slater. Rather, the Union essentially seeks to have the termination date of the Plans set later than November 6, 2003, the date preferred by the PBGC. Of course, it is basic hornbook law that an equitable remedy is "[a] nonmonetary remedy[.]" Black's Law Dictionary 1038 (Abridged 7th ed.2000). As the Union is clearly seeking a nonmonetary remedy, it is *prima facie* seeking equitable relief.

Nevertheless, the PBGC argues that equitable relief is unavailable in this action because what they seek is the legal remedy Congress provided in 29 U.S.C. § 1342, the statute governing the PBGC's ability to terminate pension plans. That statute, however, provides that if the PBGC "has determined that the plan should be terminated, it may, upon notice to the plan administrator, apply to the appropriate United States district court for a *decree* adjudicating that the plan must be terminated...." 29 U.S.C. § 1342(c) (emphasis added). A decree is clearly an equitable remedy. *See* Black's Law Dictionary 336 (defining decree as "a judicial decision in a court of equity, admiralty, divorce or probate—similar to a judgment of a court of law"). Thus, the termination of the Plans is actually an action in equity.

Indeed, if not allowed to intervene, the Union could simply file a separate action against the PBGC for equitable relief to forestall the Plans' termination date. 29 U.S.C.

§ 1303(f). Thus, there is independent jurisdiction here for the Union's intervention.[2]

■ Finally, before permitting intervention, a court "must give some weight to the impact of intervention on the rights of the original parties." *Security Ins.*, 69 F.3d at 1381. Toward that end, the PBGC contends that it will be prejudiced by the Union's proposed intervention in two ways. First, the PBGC contends that the Union does not represent all of Slater's former employees, meaning that the possibility exists that some former employees may receive more favorable treatment than others. Second, the PBGC contends that time is of the essence in resolving this action and that the Union's intervention will cause delays. These arguments are without merit.

■ First, the fact that the Union may not represent the interests of all members of the Plans is irrelevant to whether the Union may intervene. The Union unquestionably represents at least some members of the Plans, and therefore has an unmistakable interest in the outcome of this litigation. *Cf. In re Jones & Laughlin Retirement Plan*, 1987 WL 8648 (S.D.N.Y.1987), *aff'd* 824 F.2d 202 (2nd Cir.1987) (permitting unions seeking to vacate the termination of pension plans to intervene); *Bruce v. Int'l. Longshoremen's Ass'n.*, 7 F.Supp.2d 609, 617 (D.Md.1998), *aff'd* 182 F.3d 907 (4th Cir.1999) ("Unions must represent the interests of diverse categories of members"). *See also Thunderbird Mining Co.*, slip op. at p. 4 ("We do not overlook the fact that the managers of the Pension Fund have fiduciary duties in representing the interests of plan participants, and that the Plan, apparently, is composed of hourly workers and salaried employees who are not members of the USWA, but neither of these considerations argue against, let alone preclude, the intervention being requested").

Second, as noted *supra*, if the Union's motion to intervene is denied, the Union could file a separate action pursuant to 29 U.S.C. § 1303(f)(1). That action would involve essentially the same facts and legal issues as the one at hand. It would also likely cause greater delay and prejudice for the PBGC to litigate two separate actions than the rather modest delay involved in simply permitting the Union to join an action already filed and awaiting a scheduling conference. Thus, permitting the Union to intervene in this action would serve both the interests of efficiency and the consistency of results. *See Security Ins.*, 69 F.3d at 1381.

In sum, the Court finds that the Union has sufficient interest in the Plans to have standing to assert claims against the PBGC under 29 U.S.C. § 1303(f). Furthermore, those claims are based on essentially the same facts and law as those presented here such that intervention by the will not result in undue prejudice or delay. Thus, the Union's motion to intervene will be granted.

## CONCLUSION

For the reasons set forth *supra*, it is hereby **ORDERED** that the Union's motion to intervene as a defendant is **GRANTED.** The Union is to file its responsive pleading forthwith. This matter is now re-set for a Rule 16 Scheduling Conference for March 18, 2004, at 11:00 a.m. (Fort Wayne time). Counsel are to submit a revised Report of the Parties Planning Meeting, endorsed by all counsel, prior to the conference.

---

2. Although certainly not any sort of precedent, the United States District Court for the District of Minnesota reached the same conclusion. *See* Union's Memorandum, Appendix C, *Pension Benefit Guaranty Corp. v. Thunderbird Mining Co.*, Civ. No. 03–4241 (D.Minn. Nov. 25, 2003) ("In addition to challenging the USWA's right to intervene, the PBGC also argued that the USWA does not have standing under Section 1303(f) because the USWA is seeking a 'decree' to push back the termination date of the Pension Plan, while Section 1303(f) only allows the USWA to seek equitable relief. We found this argument unavailing, as a 'decree' seeking to extend the termination date, in contrast to a claim for monetary damages, seeks equitable relief.")