**HABITAT EDUCATION CENTER, INC., Plaintiff,**

v.

**Dale BOSWORTH, et al., Defendants.**

No. 03–C–1024.

United States District Court, E.D. Wisconsin.

May 24, 2004.

Ann Alexander, Environmental Law and Policy Center, Chicago, IL, Brady C. Williamson, Godfrey & Kahn, Milwaukee, Howard A. Learner, Chicago, IL, Sean O. Bosack, Godfrey & Kahn, Milwaukee, WI, Shannon W. Fisk, Chicago, IL, for Habitat Education Center Inc., David Zaber, Ricardo Jomarron, Plaintiffs.

Benjamin Longstreth, United States Department of Justice (DC), Environmental & Natural Resources Div.—General Litigation, Washington, DC, for Dale Bosworth, Chief of the U.S. Forest Service, Ann M. Veneman, Secretary of the U.S. Dept of Agriculture, Defendants.

### *DECISION AND ORDER*

ADELMAN, District Judge.

Plaintiff, Habitat Education Center, Inc., a citizen's organization engaged in forest and wildlife protection, and two of its members, bring this action against defendants, Dale Bosworth and Ann M. Veneman, heads of the United States Forest Service and its parent agency, the United States Department of Agriculture (collectively "forest service"), challenging its decision to approve certain logging activities and timber sales in the Cayuga project area of the Chequamegon–Nicolet National Forest ("CNNF") in northern Wisconsin. Plaintiffs contend that the forest service violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600–1687, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553–559 & 701–706. Before me now is a motion to intervene brought by the Ruffed Grouse Society, the Lake States Lumber Association ("LSLA") and the Lake States Resource Alliance ("LSRA") (hereinafter "applicants").

### I. PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that the forest service violated NEPA and its implementing regulations in approving the Record of Decision ("ROD") for the Cayuga project by: (1) failing to consider the cumulative impacts of other past, present and reasonably foreseeable future logging projects in the CNNF,

private lands and nearby National Forests; (2) failing to rigorously evaluate and fully consider alternatives to the proposed actions; (3) basing its decision on inadequate and outdated scientific information; and (4) authorizing actions in the Cayuga project areas that will limit alternatives under the proposed updated and revised 2003 Forest Plan. Plaintiffs further contend that the above conduct was arbitrary and capricious and not in accordance with law and thus violated the APA, 5 U.S.C. § 706.

Plaintiffs also allege that by approving the ROD for the Cayuga project, the forest service violated the NFMA and its implementing regulations because it: (1) based the project on the 1986 Forest Plan that the forest service had acknowledged was outdated and in the process of being revised; (2) failed to ensure the viability of Regional Forester's Sensitive Species; and (3) failed to appropriately monitor Management Indicator Species. Again, plaintiffs contend that defendants acted arbitrarily and capriciously and not in accordance with law and thus violated the APA, 5 U.S.C. § 706.

Plaintiffs seek a declaration that the forest service did not comply with the legal requirements cited above and an injunction halting implementation of the Cayuga project until such time as compliance is obtained.

## II. THE APPLICANTS

The Ruffed Grouse Society states that it is a non-profit, wildlife conservation organization dedicated to improving the environment for ruffed grouse, American woodcock and other forest wildlife, and that its members hunt in the CNNF. The LSLA states that it is a trade association representing companies that use timber from public lands to produce wood products. The LSRA states that it is a coalition of organizations, which advocates multiple uses of national forests. Each of the applicants states that it has an interest in proper management of the CNNF, and each provided comments on the project during the administrative phase of the proceeding that preceded the present litigation. The LSLA and LSRA also state that their members utilize timber from the CNNF, and that a

ruling in plaintiff's favor would reduce the amount of available timber.

## III. DISCUSSION

Applicants seek intervention as of right under Fed.R.Civ.P. 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b)(2). I discuss, first, their request to intervene as of right. Rule 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, to intervene as of right, the applicants must satisfy four requirements: (1) their application must be timely; (2) they must have an interest in the property or transaction which is the subject of the action; (3) disposition of the action may as a practical matter impair or impede their ability to protect the interest; and (4) existing parties must not be adequate representatives of their interest. *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 700 (7th Cir.2003); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945–46 (7th Cir.2000). All four requirements must be met before intervention as of right will be allowed. *See United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir.2003). However, a motion to intervene as of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir.1995).

In the present case, it is undisputed that applicants moved to intervene in a timely fashion. Therefore, I turn to the question of whether they have an interest in the subject matter of the action. In determining whether an applicant has an interest within Rule 24(a)(2), the policies that underlie the requirement of an interest should be the guide. *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.

1967). The determination involves an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit and to prevent the single lawsuit from becoming fruitlessly complex or unending. *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C.Cir.1969). The accommodation reached in a given case "will depend upon the contours of the particular controversy;" thus, "general rules and past decisions cannot provide uniformly dependable guides." *Id.* The question is not whether a lawsuit should be begun or defended, but whether it should be extended to include additional parties. *Id.*

■ To be entitled to intervene as of right, the applicant's interest must be "a direct, significant, legally protectable one." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380–81 (7th Cir.1995). Although these words have not been defined with precision, they signify the Seventh Circuit's "commitment to keeping the scope of intervention of right within reasonable bounds," in recognition of the fact that "intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement." *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Eng'rs,* 101 F.3d 503, 507 (7th Cir.1996); *see also Sokaogon,* 214 F.3d at 946 (stating that "at some fundamental level, the proposed intervenor must have a stake in the litigation").

The Seventh Circuit has discussed the interest requirement of Rule 24(a)(2) in connection with the standing requirement of Article III of the Constitution and indicated that a would be intervenor must have constitutional standing. *Solid Waste Agency,* 101 F.3d at 507. However, the court's treatment of the issue has been inconsistent and questions as to its position remain. *See* Tyler R. Stradling & Doyle S. Byers, *Intervening in the Case (or Controversy): Article III Standing, Rule 24 Intervention, and the Conflict in the Federal Courts,* 2003 BYU L.Rev. 419, 433–38 (2003). In *United States v. 36.96 Acres of Land,* 754 F.2d 855, 859 (7th Cir. 1985), the court stated that "[t]he interest of a proposed intervenor ... must be greater than the interest sufficient to satisfy the standing requirement." This reasoning, however, is problematic because it would essentially read out of the law a Rule 24(a)(2) interest requirement that is separate from standing. The court has also indicated that the standing requirement of Article III applies to parties seeking to intervene as of right under Rule 24(a)(2) but not to those seeking permissive intervention under Rule 24(b)(2), *Solid Waste Agency,* 101 F.3d at 509, but the rationale for this assertion has been questioned. *See* Stradling & Byers, *supra,* at 437 (stating that "if the court were correct in asserting that Article III applies to all intervenors as of right, then Article III must logically also apply to all permissive intervenors."). More recently, in *Sokaogon,* the court declined to address the relationship between a Rule 24(a)(2) interest and constitutional standing, stating that it did not need to explore "what the outer boundaries of standing to intervene might be." *Sokaogon,* 214 F.3d at 946.

Seven other circuits have addressed the issue, and five have determined that an applicant may satisfy the Rule 24(a)(2) interest requirement without possessing Article III standing. These circuits view standing as a requirement that must be satisfied throughout the case by at least one party—but not as a requirement that every party must satisfy before entering a case. Stradling & Byers, *supra,* at 425. Commentators on the question generally take the position that a would-be intervenor should not be required to establish standing in its own right. *See id.; see also* Amy M. Gardner, *An Attempt to Intervene in the Confusion: Standing Requirements for Rule 24 Intervenors,* 69 U. Chi. L.Rev. 681 (2002); Peter A. Appel, *Intervention in Public Law Litigation: The Environmental Paradigm,* 78 Wash. U. L.Q. 215, 282–85 (2000); Carl Tobias, *Standing to Intervene,* 1991 Wis. L.Rev. 415. Typically, they regard the imposition of a standing requirement in the intervention context as unsupported by law and unnecessarily burdensome.

Rule 24 does not require a proposed intervenor to prove standing, but only that, as a practical, not legal matter, its interest could

be impaired. Appel, *supra*, at 283. Moreover, the Supreme Court has suggested that intervenors need not show Article III standing in order to intervene. *See, e.g., Trbovich v. United Mine Workers*, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (allowing union member to intervene in action against union even though member could not institute his own action); *see also Diamond v. Charles*, 476 U.S. 54, 64, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (stating that Diamond's status as an intervenor in the lower court did not confer standing sufficient to keep the case alive on appeal in the absence of the state); *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (stating that California could intervene to represent the interests of its citizens even though the United States had brought the suit and presumably was the party with parens patriae standing to represent California's citizens).

Additionally, Article III represents a limitation on the power of the federal courts—not a requirement of all who seek to come before them. If, at the outset, a federal court has correctly determined that it has an actual "case" or "controversy" before it, the purpose of Article III is not frustrated by allowing intervenors to subsequently participate in the proceedings. Stradling & Byers, *supra*, at 442. Further, if standing is interpreted as a requirement on all parties, the language in Rule 24(a) requiring an interest in the outcome of the action is superfluous, and the language in Rule 24(b) requiring a claim or defense with a question of fact or law in common with the main action is even more superfluous. *Id.* at 445–47. Finally, adding an Article III standing requirement to the interest requirement of Rule 24(a)(2) is conceptually problematic particularly where, as here, a party seeks to intervene as a defendant. A party seeking to intervene as a defendant might have a concrete interest in a case but, nevertheless, lack standing, and for a court to make the standing determination it must predict the ultimate outcome of litigation and/or the scope of the judgment. Appel, *supra*, at 285–86.

Applicants' motion also raises the question of whether private parties may ever inter-vene as defendants in suits brought under NEPA. Because NEPA only imposes duties on federal agencies, litigation under NEPA inevitably involves either a public or private plaintiff bringing an action against an agency, charging that it failed to comply with a provision of NEPA, often the requirement that the agency prepare an environmental impact statement. Erik Figlio, *Stacking the Deck Against "Purely Economic Interests": Inequity and Intervention in Environmental Litigation*, 35 Ga. L.Rev. 1219, 1231 (2001). Because private parties cannot violate NEPA, some courts have concluded that they have no right to intervene as defendants in NEPA actions, even if the outcome might substantially affect their interests. *See, e.g., Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1113–14 (9th Cir.2000) (holding that private party not entitled to intervene because NEPA requires action only by government).

Such position, however, has been strongly criticized. In *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3d Cir.1998), the court said it was

> reluctant to endorse a narrow approach that makes the onus of compliance the litmus test for intervention. Such a wooden standard minimizes the flexibility and spirit of Rule 24 as interpreted in *Cascade Natural Gas*. The reality is that NEPA cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention—the protection of third parties affected by pending litigation.

*Id.* (internal citation omitted); *see also Sierra Club v. Glickman*, 82 F.3d 106, 109–10 (5th Cir.1996). Moreover, the Fifth Circuit determined that trade associations could intervene as of right as defendants in NEPA suits based on the substantial economic harm its members might suffer in the event of a decision against the defendant agency. *Sierra Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir.1994); *see also* Figlio, *supra*, at 1245 (arguing that the language and legislative history of NEPA read in conjunction with the right of review provisions of the APA suggest that the threat of injury to an economic interest should be sufficient to enable

a party to intervene as a defendant in a NEPA action).

The Seventh Circuit's position on the question is not entirely clear. In *Wade v. Goldschmidt*, 673 F.2d 182, 184 (7th Cir.1982), the court denied intervention to various municipalities and private parties that would have benefitted from a highway project because their interests were not directly implicated by the lawsuit. Although *Wade* has been cited as support for a categorical rule barring private support for governmental agencies in NEPA cases, the decision itself "did not espouse such a rigid position." *Kleissler*, 157 F.3d at 971. In *Wade*, the court cautioned that a different case would be presented if the suit would " 'directly alter contractual or other legally protectable rights of the proposed intervenors.' " *Id.* (quoting *Wade*, 673 F.2d at 186 n. 6). Since *Wade*, the Seventh Circuit has not revisited the issue of private party intervention in NEPA actions but has indicated generally that applicants should be able to intervene as defendants to protect their interests. *See Solid Waste Agency*, 101 F.3d at 507 (stating that "the strongest case for intervention is not where the aspirant for intervention could file an independent suit, but where the intervenor-aspirant has no claim against the defendant yet a legally protected interest that could be impaired by the suit").

■ Notwithstanding the importance of the questions of whether would-be intervenors must establish Article III standing and whether private parties may intervene as defendants in NEPA cases, I conclude that it is possible to resolve the present motion without determining either issue. This is so because, however such questions are resolved, applicants in the present case do not present facts sufficient to demonstrate that they satisfy the interest requirement of Rule 24(a)(2). As previously stated, applicants must show that their interest is direct, significant and legally protectable. Professor Shapiro has identified five categories of interests that courts consider sufficient to warrant intervention, one of which is where a private party seeking intervention has no legal claim that can be independently asserted against any of the parties and is subject to no claim

that can be asserted against it but, nevertheless, has an identifiable interest—usually but not always economic—that sets it apart from an ordinary member of the public. *See* David L. Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators*, 81 Harv. L.Rev. 721, 740 (1968). This is the sort of interest that applicants assert. LSLA and LSRA argue that their members may suffer harm if the result of the suit is that less timber will be sold than the amount proposed by the forest service. The Ruffed Grouse Society argues that its members may suffer harm to their interests in hunting and improving the habitat for ruffed grouse, American woodcock and other forest wildlife. Whether these types of interest satisfy Rule 24(a)(2) depends on: (1) whether it is likely rather than speculative that applicants' members will suffer harm, and, if they are likely to suffer harm, whether such harm is likely to be (2) immediate rather than remote; and (3) significant rather than marginal. *See Schipporeit*, 69 F.3d at 1377 (indicating interest need be more than a mere "betting" interest and less than a recognized property right); *see also* Shapiro, *supra*, at 740 (stating that interest depends on "immediacy and degree" of harm threatened).

■ Applying this test to the present case, even assuming that plaintiffs will prevail in the lawsuit, applicants do not allege facts sufficient to indicate that its members are likely to suffer harm. Further, even if applicants' members do suffer harm, applicants allege no facts suggesting that such harm is likely to be immediate or substantial. Thus, applicants' stake in the lawsuit falls short of being "fundamental." *Sokaogon*, 214 F.3d at 946. Neither applicants nor their members have a property interest in the timber in question nor are they parties to contracts involving it. *See, e.g., Espy*, 18 F.3d at 1207. Further, they do not contend that they have an interest of the sort that is recognized by common law or statute as, for example, that their property may diminish in value or that they may suffer aesthetic or environmental harm. *See Solid Waste Agency*, 101 F.3d at 505–07. Applicant Ruffed Grouse Society alleges that its members' recreational rights might be impaired. However, it is unlikely

that this type of interest could satisfy Rule 24(a)(2) but, even assuming that it could, applicant describes the interest in such conclusory terms and with so little factual support that it does not satisfy the requirement of Rule 24(a)(2). LSLA and LSRA allege that their members might suffer economic harm as the result of reduced timber sales but state no facts that enable me to infer that such possibility is more than speculative. Moreover, even if LSLA's and LSRA's members might suffer some economic harm down the line, no facts are alleged from which it could be inferred that harm would be immediate or significant. Finally, all applicants indicate that they have an interest in ensuring multiple uses of the forest. However, such interest is indistinguishable from that of the public at large. In sum, even taking applicants' allegations in the light most favorable to them, the facts alleged are insufficient to establish an interest within Rule 24(a)(2).

■ Because applicants' interests in the subject matter of the litigation are insufficient to justify intervention, I need not address the question of whether the disposition of the case might impair or impede their ability to protect such interests. However, even assuming that applicants' interests were sufficient to justify intervention and that such interests might be impaired by the litigation, I would still deny applicants' motion because representation of their interests by existing parties is adequate. In determining whether representation is adequate, the court must first ascertain whether the interests of the existing party and the applicant are identical, similar or adverse, or whether the applicant's interest is not represented at all. Katharine Goepp, *Presumed Represented: Analyzing Intervention as of Right When the Government is a Party*, 24 W. New Eng. L.Rev. 131, 167 (2002) (citing 26 Fed. Proc. § 59:303 at 228 (1999)). If applicant's interest is not represented at all or if it is adverse to that of the existing party, representation is inadequate. If the interest of the original party and that of the applicant are identical, adequacy of representation is presumed. *Solid Waste Agency*, 101 F.3d at 508. If the interest of the applicant and of the existing party are similar, but not identi-

cal, the court must scrutinize the circumstances of the case and make a determination.

■ When a government agency charged with representing a public interest is a party and the intervenor's interest falls within the public interest, the interests may well be insufficiently distinguishable to justify intervention. The question is whether the applicant's interest is really different from the agency's and, if so, whether the difference is more than slight. Goepp, *supra*, 170–71. The nature of the judicial proceeding is also relevant to whether representation is adequate. If the purpose of the litigation is to secure a judicial determination as to whether an agency complied with statutory requirements and the court is limited to reviewing the administrative record, it is unlikely that a private party will be able to add much to the agency's submissions. *See* Appel, *supra*, at 296–97.

■ In the present case, the differences between the forest service's interest and those of applicants are so small that applicants' interests do not require separate representation. The forest service and applicants share the same narrow objective: to uphold the timber sale proposed by the forest service. In addition, the broader goals of the forest service and the applicants are similar if not identical. The forest service is required by law to promote multiple uses of national forests, 16 U.S.C. § 538, and applicants indicate that they also support a multiple use policy. Further, the object of the lawsuit is to determine whether the forest service complied with a variety of statutory requirements. In litigation of this type, the court generally reviews the administrative record assembled by the agency. *See* 5 U.S.C. § 706; *see also* Appel, *supra*, at 296–97. In such circumstances, the only thing that the applicants could add is another set of eyes to review the record and, perhaps, a slightly different motivation. *See Natural Res. Def. Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 834 F.2d 60, 61–62 (2d Cir.1987) (holding representation of applicant's interests adequate where only difference between applicant and original party is

motive for participating). For the above reasons, I conclude that, even if applicants had an interest within Rule 24(a)(2), such interest is adequately represented by the forest service. Thus, for this reason also, applicants' motion to intervene as of right will be denied.

Applicants also seek permissive intervention. Permissive intervention is controlled by Fed.R.Civ.P. 24(b), which provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

While much has been said about intervention of right under Rule 24(a), the rights of those trying to intervene in the category of "permissive intervention" under Rule 24(b) have not received as much attention. Gardner, *supra*, at 683. However, as in the case of intervention of right, there is considerable confusion concerning the requirements for permissive intervention, as well as disagreement among the circuits about such requirements. *Id.* at 697–98. Rule 24(b)(2) does not require an interest as a condition of intervention, and the Supreme Court has said that the rule "plainly dispenses with any requirement that the intervenor . . . have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Improvement Co.,* 310 U.S. 434, 459, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

Nonetheless, courts have reached differing conclusions concerning what an applicant for permissive intervention must establish. Some courts have required applicants to establish Article III standing, *see, e.g., Mausolf v. Babbitt,* 85 F.3d 1295 (8th Cir.1996), while others have rejected such a requirement, *see, e.g., Hodgson v. United Mine Workers,* 473 F.2d 118 (D.C.Cir.1972); *see also Ruiz v. Estelle,* 161 F.3d 814 (5th Cir.1998). The position of the *Mausolf* court seems clearly wrong. *See* Gardner, *supra,* at 702 (stating that applicant should be able to intervene under Rule 24(b)(2) if it meets requirements

of the rule and the original parties satisfied the standing requirement and remain in the suit). The Seventh Circuit does not impose an Article III standing requirement on applicants for permissive intervention, *see Solid Waste Agency,* 101 F.3d at 509 (stating that " 'interest' does not appear in Rule 24(b)"), although, as previously indicated, the court's view that standing is required for intervention of right is somewhat illogical in view of this position.

The Seventh Circuit has indicated that "permissive intervention is wholly discretionary with the district court." *Keith v. Daley,* 764 F.2d 1265, 1272 (7th Cir.1985). However, the applicant must demonstrate that its claim or defense and the main action have a question of law or fact in common before a court may "exercise its discretionary power to grant intervention." *Schipporeit,* 69 F.3d at 1381. In the present case, applicants' claim for permissive intervention fails because applicants have no claim or defense in common with a claim or defense in the suit. The only claim in the suit is plaintiffs' allegation that the forest service failed to comply with various statutory obligations. Applicants make no similar claim. The forest service's defense is that it did in fact comply with the relevant statutes. Although applicants agree with the forest service's position, it would not be accurate to say that they therefore had a defense in common with the forest service. This is so because plaintiffs make no claim against the applicants and because the statutes on which plaintiffs' claims are based do not apply to applicants.

Finally, even if it could be said that applicants had a claim or defense in common with the main action, I would, in the exercise of my discretion, decline to permit them to intervene. As previously discussed, applicants' connection to the case is relatively attenuated. Further, there is no indication that applicants can make a significant contribution to the development of the underlying factual and legal issues. *See League of United Latin Am. Citizens v. Clements,* 884 F.2d 185, 189 (5th Cir.1989). Moreover, when intervention of right is denied because the government is likely to provide adequate representation, the case for permissive interven-

tion is much weakened. *Menominee Indian Tribe of Wis. v. Thompson,* 164 F.R.D. 672, 678 (W.D.Wis.1996). Finally, it is relevant that applicants have participated in the case at the administrative level where they have made their views known. Thus, applicants' alternative motion for permissive intervention will be denied. I will, however, permit applicants to file amicus curiae briefs.

## IV. CONCLUSION

For the reasons stated,

**IT IS THEREFORE ORDERED** that applicants' motion to intervene is **DENIED.** Applicants may, however, participate in the case as amici curiae if they so wish.